# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00102-CR

**Steven Jones, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT
### NO. 10,745, HONORABLE TERRY FLENNIKEN, JUDGE PRESIDING

## O P I N I O N

Appellant Steven Jones was convicted by a jury of two counts of indecency with a child by contact and sentenced to ninety-nine years imprisonment, enhanced by a 1987 conviction for aggravated sexual assault. *See* Tex. Pen. Code Ann. § 21.11 (West 2003). In six issues, he appeals, asserting that the evidence is legally and factually insufficient, the jury charge contained reversible error, and the court erred in admitting his confession. We affirm the conviction.

### Factual Summary

Appellant was indicted for touching the sexual organ of V.M., who was five or six years old at the time of the offense (count one), and touching the sexual organ and anus of D.M., who was three or four (count two); all of the inappropriate touching was alleged to have happened on the

same night.[1]  The victims are sisters, and appellant is their step-grandfather.  Their parents are Victor Gianna and Christina Rawls.  Gianna and Rawls were not married at the time of the offense, but have since married.  Appellant is married to Mary Jones, who is Rawls's mother, and the victims refer to appellant as their grandfather.

Gianna testified as an outcry witness and said that in February 2003, appellant's name came up in conversation while V.M. was present, and V.M. started "just, like, panting and stayed real quiet."  Gianna took V.M. aside and asked her if anything was wrong, saying he would not be angry at V.M. if something had happened.  At first, V.M.'s "eyes got big and she stayed quiet for a while."  Gianna talked to her "about good touch/bad touch," and asked "specifically what happened to her, if anything happens to her when she goes to her grandmother's house."  V.M. told Gianna that appellant had touched her "in her private area."  She "pointed to her private area" and started crying.  Gianna then took D.M. aside to ask her the same question, and "she told [Gianna] the same thing."  He asked her if her grandfather ever touched her in any way, and D.M. told him "[t]hat he would touch her in her private area."  Rawls was with Gianna and D.M. during this conversation.[2]

---

[1]  The indictment alleged that the touching occurred "on or about the 1st day of March, A.D. 2002."  The State elicited testimony explaining that the victims' outcries were made in March 2003, but that V.M., who turned six years' old in early February 2003, indicated in her interview with the Child Advocacy Center that she was five years' old when appellant touched her.  In his interview with the police on March 26, 2003, appellant admitted that he had touched V.M. about "a month and a half" earlier, which would be early February 2003.  The State used March 2002 as the "on or about date" so as to account for any discrepancies in time, but the evidence shows that the inappropriate touching made the subject of this prosecution occurred during one incident on one night.

[2] Despite hearing the girls's outcries, however, Gianna did not report appellant to the authorities because he and Rawls were wanted by the police.  At the time of trial, Gianna was in jail, having been sentenced to five years' imprisonment for burglary and engaging in organized crime.

Gianna denied having problems with appellant except that "he wasn't supposed to be around my kids, and he was always somehow around them."[3] Gianna testified that he did not like it when the girls stayed with Mary Jones or with Jones's mother, Mary Stockton, because "they let [appellant] go over there and walk around freely and he would tell them he wanted to pick up the kids and he would pick them up and drive off."

Cynthia Ledesma, Christina Rawls's cousin, lived with Stockton. Ledesma said appellant frequently came over to see V.M. and D.M., but she never saw him behave inappropriately. She said that in March 2003, while Gianna was hiding from the police and the children were being cared for by relatives, he called and yelled at Stockton, telling her that he did not want the children to be around appellant. After hearing that complaint, Ledesma talked to each girl individually. V.M. told Ledesma that appellant "would touch her in her private area," and D.M. "said the same thing." Ledesma took the girls to the Bastrop County Sheriff's Office the next day.

V.M. was called to testify and, after some inconsistent answers early on, demonstrated to the trial court's satisfaction that she knew the difference between the truth and a lie. V.M. testified that one night while she and D.M. were at appellant's house watching cartoons and a "[n]asty" movie, appellant touched her on "[t]he private," which she also described as "[b]etween your legs." She testified that appellant touched her skin under her panties with his hand and that he touched D.M. "[o]n the behind." V.M. said that it was D.M. who turned off the "nasty movie."

---

[3] Gianna was not asked to explain why he did not want appellant to be around his daughters, but during the punishment phase, it was shown that appellant had been convicted in 1987 of sexually assaulting Rawls, appellant's stepdaughter, Gianna's wife, and the mother of the victims.

3

Lee Nusbaum, an investigator with the Bastrop County Sheriff's Department, testified that in March 2003, after his office received a report of V.M.'s outcry, he interviewed appellant, who was already in police custody for parole violations. During the interview, Nusbaum showed appellant a videotape of an interview with the girls, and appellant lowered his head and began to cry. Appellant said he would not make a written statement but agreed to a videotaped statement. Nusbaum read appellant his rights and had him sign a form acknowledging that he had been informed of and understood his rights, and that he wished to waive them. Appellant told Nusbaum that on the night in question, about a month and a half before the interview, he was lying on his couch, watching pornographic movies with V.M. and D.M., and that he "reach[ed] down and touch[ed] [V.M.] between her legs and—twice between her legs." Appellant said he touched V.M. under her pants but not inside her panties, but said it was "possible" that he touched V.M.'s skin. Appellant said he was "[j]ust rubbing across her panties." Asked whether he had touched D.M., he said, "I don't know. There's a possibility that I could have, but not intentionally." Appellant thought D.M. turned off the pornographic movie.

**Sufficiency of the Evidence**

In his first two issues, appellant argues that the evidence is legally and factually insufficient to support the jury's verdict as to count two (the molestation of D.M.) because there was insufficient evidence to show he touched D.M. on her sexual organ or anus.

In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the verdict and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim.

4

App. 2000). In reviewing the factual sufficiency, we view all of the evidence in a neutral light, comparing the evidence in support of a disputed fact with evidence tending to disprove that fact. *Id*. We will set aside a verdict for factual insufficiency only if the proof of guilt is so obviously weak or so greatly outweighed by contrary proof as to undermine confidence in the verdict. *Id*. at 11. We will reverse a fact-finder's determination only if the record indicates manifest injustice; otherwise, we will accord due deference to the determinations of fact, particularly those involving evaluations of credibility. *Id*. at 8-9. The jury is the sole judge of the weight and credibility of witness testimony. *Barnes v. State*, 62 S.W.3d 288, 298 (Tex. App.—Austin 2001, pet. ref'd). The jury may accept or reject all or any of the evidence presented by either side, may draw reasonable inferences from the evidence, and must reconcile any evidentiary conflicts. *Id*. We determine the sufficiency of the evidence by viewing the cumulative effect of all of the evidence, not each fact in isolation. *Id.* at 297.

A person commits indecency with a child by contact if he "engages in sexual contact with the child." Tex. Pen. Code Ann. § 21.11(a)(1). Sexual contact is "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." *Id*. § 21.11(c)(1). The court of criminal appeals has stated that "we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). A child need not testify with precision as to where she was touched, and evidence that she was touched on her "privates" or her "private area" or "between her legs" can support a finding that she was touched on her anus or genitals. *See*, *e.g.*, *Gallegos v. State*, 918 S.W.2d 50, 54 (Tex. App.—Corpus Christi 1996, pet.

5

ref'd) (seven-year-old victim told outcry witness that defendant kissed her, took off her clothes, and put his "pee-pee" "in front of" and "in back of" her); *O'Hara v. State*, 837 S.W.2d 139, 141 (Tex. App.—Austin 1992, pet. ref'd) (eleven-year-old victim testified that defendant touched victim's "privates" and put defendant's "privates" "into my rear end"); *Gottlich v. State*, 822 S.W.2d 734, 741 (Tex. App.—Fort Worth 1992, pet. ref'd) (thirteen-year-old victim testified that defendant touched her "private," her "pee pee," and "down there," and that he put "his hand down my pants and panties"), *overruled in part on other grounds by Curry v. State*, 861 S.W.2d 479, 482 n.2 (Tex. App.—Fort Worth 1993, pet. ref'd); *Guia v. State*, 723 S.W.2d 763, 766 (Tex. App.—Dallas 1986, pet. ref'd) (nine-year-old victim testified that defendant "touched her in her 'private place'"); *Bryant v. State*, 685 S.W.2d 472, 475 (Tex. App.—Fort Worth 1985, pet. ref'd) (five-year-old victim testified that defendant touched her under her underpants and "down between [her] legs").

In his statement to the police, appellant said that he might have touched D.M., but not intentionally. Gianna testified that D.M. told him the same thing that V.M. had told him, which was that appellant "touch[ed] her in her private area." Ledesma also testified that she spoke to both girls separately, that V.M. told her that appellant "touch[ed] her in her private area," and that D.M. "said the same thing." Finally, V.M., who was six years' old at the time she testified, said that she saw appellant touch D.M. "[o]n the behind." Viewed in the light most favorable to the jury's verdict, a reasonable jury could have found that this evidence established beyond a reasonable doubt that appellant touched D.M. either on her genitals or her anus. *See Johnson*, 23 S.W.3d at 7. Even when we view all of the evidence in a neutral light, there was no evidence presented that would dispute the State's evidence, which is not so obviously weak as to undermine confidence in the verdict. *See*

*id.* at 11. We hold that the evidence is legally and factually sufficient to support the jury's verdict as to count two. We overrule appellant's first and second issues.

## Misspelling of the Victims' Last Name

In his third and fourth issues, appellant contends that the evidence is insufficient because the indictment alleged that the victims' last name was "Guana," but the evidence showed their name is "Gianna." He argues that the two names are "incapable of being pronounced" alike.

The phrase "idem sonans" refers to names that, despite having different spellings, sound sufficiently alike that a listener would have difficulty distinguishing them. *Farris v. State*, 819 S.W.2d 490, 496 (Tex. Crim. App. 1990), *overruled on other grounds by Riley v. State*, 889 S.W.2d 290, 301 (Tex. Crim. App. 1993) (op. on reh'g); *Martin v. State*, 541 S.W.2d 605, 606-07 (Tex. Crim. App. 1976); *see Dingler v. State*, 705 S.W.2d 144, 145 (Tex. Crim. App. 1984) ("rule of 'idem sonans' is that absolute accuracy in spelling a name is not required"; if misspelled name sounds "practically identical with the correct name," misspelling sufficiently identifies the person to whom it refers). A variance between the spelling of a victim's name in an indictment and the proper spelling as proved at trial does not require reversal if the names sound alike, and whether two names are idem sonans is a question left to the fact-finder. *Farris*, 819 S.W.2d at 496; *see Martin*, 541 S.W.2d at 607-08. Unless the two names are "patently incapable of being sounded alike," a defendant's failure to ask that the fact-finder resolve the issue waives the complaint on appeal. *Farris*, 819 S.W.2d at 496; *see Martin*, 541 S.W.2d at 608. Appellant never complained that the victims' last names were spelled incorrectly in the indictment and has not shown that the names are incapable of sounding alike, and therefore he waived any error associated with the misspelling.

7

Furthermore, in 2001, the court of criminal appeals reaffirmed the fatal variance doctrine, which provides that "when faced with a sufficiency of the evidence claim based upon a variance between the indictment and the proof, only a 'material' variance will render the evidence insufficient." *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001).[4] A variance between indictment and evidence is fatal only if it is material and prejudices the defendant's substantial rights. *Id*. (quoting *United States v. Sprick*, 233 F.3d 845, 853 (5th Cir. 2000)). That determination is made by considering (1) whether the charging instrument sufficiently informed the defendant of the charge so that he was able to prepare an adequate defense and (2) whether prosecution under the deficient charging instrument might subject the defendant to the risk of a later prosecution for the same crime. *Id*. (quoting *Sprick*, 233 F.3d at 853).

Appellant did not complain about the misspelling, seek to quash the indictment, or argue that he was surprised by the State's proof at trial. *See Bowker v. State*, 481 S.W.2d 141, 142 (Tex. Crim. App. 1972); *Lopez v. State*, 654 S.W.2d 521, 524 (Tex. App.—Corpus Christi 1983, pet. ref'd). In fact, the misspelling was never noted in any way, and the record shows that appellant knew the identity of the alleged victims from the beginning of the investigation, which started about three

---

[4] We have been unable to find case law that discusses idem sonans in light of *Gollihar* other than in passing. *See Arellano v. State*, 54 S.W.3d 391, 395 (Tex. App.—Waco 2001, pet. ref'd) (citing *Gollihar* for proposition that variance between victim's name in indictment and proof at trial may be fatal, and stating that misspelling is not fatal if within idem sonans); *see also Sanchez v. State*, No. 07-02-0287-CR, 2004 Tex. App. LEXIS 4440, at *5 (Tex. App.—Amarillo May 17, 2004, no pet.) (not designated for publication) (discussing idem sonans and stating that consideration of sufficiency of evidence must involve *Gollihar* inquiry into materiality of name variance). However, the rule of idem sonans, that a misspelling is not fatal if it sounds like the correct name and thus sufficiently identifies the victim so that the defendant is not misled to his prejudice, *see Dingler v. State*, 705 S.W.2d 144, 145 (Tex. Crim. App. 1984), harmonizes with the holding of *Gollihar* that a variance is not fatal unless if it is material and prejudices the defendant's substantial rights.

months before the indictment was prepared. Further, because appellant may "avail himself of the entire record and not merely the charging instrument," there is no risk that he could be charged again later for the same offense. *See Santana v. State*, 59 S.W.3d 187, 195 (Tex. Crim. App. 2001). Appellant has not demonstrated surprise or prejudice with regard to any variance. *See id.*; *Gollihar*, 46 S.W.3d at 257. We overrule appellant's third and fourth issues on appeal.

### Was the Jury Charge Erroneous Under *Ngo* and *Francis*?

In his fifth issue, appellant argues that the jury was erroneously allowed to convict him without requiring a unanimous verdict as to where she was touched.[5]

---

[5] The State argues that appellant waived this issue when, asked whether there were any objections to the jury charge, he answered, "None from the defense." The State cites to *Reyes v. State*, in which our sister court held that the defendant waived any charge error by "affirmatively approv[ing] the charge as written." 934 S.W.2d 819, 820 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (statement that "defense has read both charges and is satisfied with them" waived any error). The *Reyes* court distinguished between situations in which a defendant fails to request an instruction or object to an omission and those in which a defendant "*affirmatively approves the charge as written*, telling the trial judge that he sanctions the charge." *Id.* We decline to follow *Reyes* in holding that appellant waived any error by stating that he had no objection to the jury charge. *See Huizar v. State*, 12 S.W.3d 479, 484 (Tex. Crim. App. 2000) (considering defendant's issue related to jury charge error despite failure to object or request proper charge); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (if defendant objected to charge error, conviction will be reversed unless error is harmless; if no proper objection, conviction will be affirmed unless "fundamental error" caused "egregious harm"); *see also Ponce v. State*, 89 S.W.3d 110, 117 (Tex. App.—Corpus Christi 2002, no pet.) ("Based upon a reading of *Almanza*, and following the analysis and holding of other sister courts, we find that an error in a jury charge cannot be waived by an affirmative approval of the jury charge." (footnote omitted)); *Ward v. State*, 72 S.W.3d 413, 417 (Tex. App.—Fort Worth 2002, no pet.) ("we reject the State's argument . . . that Appellant has forfeited his complaint of error in the jury charge" by stating he had "no problem" with charge); *Webber v. State*, 29 S.W.3d 226, 232 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) ("We are unpersuaded by the state's waiver by 'affirmative approval' argument for three reasons. First, it cannot withstand a careful reading of *Almanza*. Second, the cases that have accepted this waiver argument are not consistent with our reading of *Almanza* or, in the alternative, are distinguishable. Third, we find the right at issue in this case either cannot be waived or must be expressly waived.").

The Texas Constitution requires a unanimous verdict in felony criminal cases. Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2005). Allowing a jury to choose from several separate acts, each of which is a violation of a specific statute, without requiring the jury to agree on which act was committed violates the unanimity requirement. *Ngo v. State*, 175 S.W.3d 738, 747-48 (Tex. Crim. App. 2005); *Francis v. State*, 36 S.W.3d 121, 124-25 (Tex. Crim. App. 2000). However, allowing a jury to choose between alternative theories of how an offense was committed does not run afoul of the unanimous-verdict requirement.[6] *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004); *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

Count two of this indictment alleged that appellant, "on or about the 1st day of March, A.D. 2002 . . . did then and there, with the intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly engage in sexual contact with [D.M.] by touching the female sexual organ and anus of" D.M. The jury charge instructed the jury to convict appellant on count two if it found that "on or about 1st day of March, A.D. 2002 . . . [appellant] did then and there with the intent to arouse or gratify the sexual desire of said defendant, intentionally or knowingly engage in sexual contact with [D.M.] by touching the female sexual organ or anus of" D.M. Appellant argues that the jury charge, by allowing the jury to convict him of indecency with D.M. if it believed he touched her genitals *or* her anus, did not require agreement about where he touched her, and thus

---

[6] If an indictment alleges differing means of committing an offense, a trial court does not err by charging the jury in the disjunctive. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *see Rosales v. State*, 4 S.W.3d 228, 231 (Tex. Crim. App. 1999).

improperly allowed the jury to convict him without reaching a unanimous verdict as to the offense committed. We disagree.

In *Francis*, the defendant was accused of indecency with a child, charged with improperly touching the victim on four separate days; in two of the alleged incidents he was alleged to have touched the victim's breasts and in the other two he was alleged to have touched her genitals. 36 S.W.3d at 122. At trial, the State elected to seek one conviction, relying on one breast-touching incident and one genital-touching incident, and the jury charge allowed a conviction on a finding that the defendant touched the victim's breasts *or* genitals, without requiring the jury to agree on which incident they were voting to convict. *Id*. The court of criminal appeals held that the charge improperly authorized the jury to convict the defendant of one count of indecency without reaching agreement on which of the acts he committed, noting that "[t]here was never a single incident in which the appellant touched both the breasts and the genitals of the victim." *Id*. at 124-25. The court held that the charge did not submit two alternate means of committing one offense, but instead submitted two separate offenses in the disjunctive. *Id*. at 124 ("These incidents [on which the State elected to proceed] constitute two separate offenses.").

In *Ngo*, the defendant was charged with one count of credit card abuse through allegations of "three statutorily different criminal acts"—stealing a credit card, receiving the stolen credit card, or presenting the card for a purchase. 175 S.W.3d at 744. The court of criminal appeals held that the three alleged acts were "all credit card abuse offenses, to be sure, but they are not the same, specific credit card abuse criminal acts committed at the same time or with the same *mens rea* and the same *actus reus*." *Id*. at 745. The court noted that "[a] handy, though not definitive, rule of

11

thumb" to help determine whether a statute sets out different offenses versus listing possible manner and means of committing an offense "is to look to the statutory verb defining the criminal act. That verb—such as steal, receive, or present— . . . is generally the criminal act upon which all jurors must unanimously agree." *Id*. at 745-46 n.24. The court reiterated that a trial court must require a jury to "reach a unanimous verdict on which single, specific criminal act the defendant committed." *Id*. at 748.

Here, appellant was charged with one count of indecency with D.M. occurring on one day, the same day that V.M. was molested, and the State alleged and presented evidence of two possible means by which appellant committed the offense. Because there was only one incident of touching alleged, the analysis in *Francis*, which concerned four separate incidents of touching, does not control our decision. *See* 36 S.W.3d at 124. Further, the statute under which appellant was charged, indecency by contact, does not show the same kind of legislative intent described in *Vick v. State*.[7] *See* 991 S.W.2d 830, 833 (Tex. Crim. App. 1999). The conduct proscribed by the statute is "engag[ing] in sexual contact with the child," which is defined as touching a child's anus, breast, or genital area; where the child is touched is a manner and means element of the offense. *See* Tex.

---

[7] *Vick v. State* concerned double-jeopardy issues. 991 S.W.2d 830, 831 (Tex. Crim. App. 1999). After Vick was acquitted of penetrating the victim's sexual organ with his sexual organ, he was again indicted for aggravated sexual assault for the same incident, alleged to have contacted the victim's sexual organ with his mouth and with his sexual organ, each of which is set out as an offense under different subsections of the aggravated sexual assault statute. *Id*.; *see* Tex. Pen. Code Ann. § 22.021 (West Supp. 2005). The court held that the structure of the statute demonstrated a legislative "intent to separately and distinctly criminalize any act which constitutes the proscribed conduct," and that therefore double jeopardy did not protect the defendant from being separately prosecuted for the other two alleged offenses. *See Vick*, 991 S.W.2d at 833.

Pen. Code Ann. § 21.11; *see also Ex parte Chafin*, No. 03-04-00210-CR, 2005 Tex. App. LEXIS 9678, at *5-6 (Tex. App.—Austin Nov. 17, 2005, no pet.) ("Like aggravated sexual assault, indecency with a child is a conduct-oriented offense. At the relevant time, section 21.11 criminalized two distinct types of conduct requiring different acts to commit: (1) any touching of the anus, breast, or any part of the genitals of a child; or (2) exposure of the defendant's anus or genitals knowing that a child is present. . . . The word 'or' was used by the legislature to distinguish and separate the proscribed conducts. . . . We conclude that the legislature intended the two separately described conducts to constitute separate statutory offenses."). In other words, the statute provides "differing methods of committing the offense" of indecency by contact, rather than several distinct offenses, *see Kitchens*, 823 S.W.2d at 258, and the jury was required to reach a unanimous verdict on whether appellant committed the criminal act of improperly touching D.M. *See Francis*, 36 S.W.3d at 128 (Johnson, J., concurring) ("The indictment against appellant contained one count of indecency with a child, alleging two kinds of contact on the same date. The indictment was valid on its face; *if both types of contact occurred at the same time, they would comprise a single act*." (emphasis added)); *see also Ngo*, 175 S.W.3d at 748 (requiring unanimity as to which "single, specific criminal act" was committed). We therefore hold that the jury charge did not allow a non-unanimous verdict as to what offense appellant committed. The jury was given two options to determine the manner and means by which the single offense was committed on one single night, and it reached a unanimous decision that appellant improperly touched D.M. We overrule appellant's fifth point of error.

13

**Admission of Appellant's Statement**

In his sixth and final issue, appellant asserts that the trial court erred in admitting his confession into evidence, arguing that the statutory warnings he was given were improper.

Before Nusbaum began his videotaped interview of appellant, he verbally told appellant his statutory rights[8] and then had appellant sign a written statement of those rights, acknowledging that he both understood and waived his rights. The written waiver stated that appellant had "the right to have a lawyer present to advise [him] *prior to or during* any questioning" (emphasis added), but Nusbaum stated, "You have the right to have a lawyer present to advise you *prior to* answering any questions." (Emphasis added.) Nusbaum neglected to expand the verbal warning to inform appellant that he had the right to an attorney's advice during questioning. This failing, appellant argues, rendered the admonition ineffective and requires reversal and the suppression of the confession. We disagree.

Appellant filed a motion to suppress his statements, as well as any other tangible evidence and any police testimony about appellant's actions or statements while in custody. The motion stated that his statements "were obtained in violation of [appellant's] right under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, Article 1, §§ 9, 10, and

---

[8] A defendant's statement may only be used against him if he was informed of his right to remain silent, the caution that anything he said could be used against him in court, the right to an attorney and to have an attorney appointed, and the right to terminate the interview at any time. *See* Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West 2005).

19 of the Constitution of the State of Texas, and Chapter 14 and Article 38.22 of the Texas Code of Criminal Procedure," but did not explain which rights were at issue or how they were violated.

The trial court held a pre-trial hearing on appellant's motion to suppress. At that hearing, Nusbaum testified about the appellant's statement. Nusbaum testified that he read appellant his statutory warnings and that appellant indicated that he understood his rights and signed the written warning waiving his rights. At the hearing, appellant asked whether appellant was in police custody or free to leave; Nusbaum testified that appellant was handcuffed and could not leave. Nusbaum did not recall appellant saying that he could not read the written warning without his glasses, and he testified that he had not altered the videotape of appellant's statement in any way. After a few more questions related mostly to the search of appellant's house, appellant passed the witness, and the trial court denied the motion to suppress. At no point during the hearing did appellant point out that Nusbaum told him only that he was entitled to counsel *before* questioning, nor did appellant's motion raise this issue.

By his failure to make a clear objection at trial that comports with his argument on appeal, appellant has waived any error in the admission of his confession. *See Saldano v. State*, 70 S.W.3d 873, 889 (Tex. Crim. App. 2002) ("We have consistently held that the failure to object in a timely and specific manner during trial forfeits complaints about the admissibility of evidence. This is true even though the error may concern a constitutional right of the defendant." (footnote omitted)); *Ramirez v. State*, 815 S.W.2d 636, 645 (Tex. Crim. App. 1991) (defendant was told, "'*I* have the right to remain silent' instead of '*you* have the right," but any error was waived by his failure to object on that basis at trial). We overrule appellant's final issue.

## Conclusion

We have held that appellant's confession was properly admitted, that the misspelling of the victims' name does not merit reversal, that the jury was properly charged, and that the evidence is sufficient to support the jury's verdict. Having overruled appellant's issues on appeal, we affirm the judgment of conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   February 3, 2006

Publish