# NO. 12-18-00351-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DANNY SHANE LAFAITT, APPELLANT* | *§* | *APPEAL FROM THE 114TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS, APPELLEE* | *§* | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Danny Shane Lafaitt appeals his conviction for stalking. He presents three issues on appeal. We affirm.

## BACKGROUND

Appellant was charged by indictment with stalking. The State alleged that Appellant took action or communicated with Shanna Williams in violation of the Texas harassment statute on four separate occasions. Appellant pleaded "not guilty" and the matter proceeded to a jury trial. The jury ultimately found Appellant "guilty" and assessed a ten-year sentence and recommended probation. The trial court followed the jury's recommendation and assessed a ten-year sentence, probated for ten years, without a fine. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant contends the evidence is insufficient to support his conviction because the four communications complained of in the indictment do not rise to the statutory definition of obscenity. In his second issue, Appellant contends the trial court erred in denying his motion for directed verdict. Because a challenge to the trial court's ruling on a motion for directed

verdict is in actuality a challenge to the sufficiency of the evidence to support the conviction, we address these issues together. *See Madden v. State*, 799 S.W.2d 683, 686 (Tex. Crim. App. 1991).

**Standard of Review**

In Texas, the *Jackson v. Virginia* legal sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth Amendment to sustain a criminal conviction. *See Jackson v. Virginia*, 443 U.S. 307, 316–17, 99 S. Ct. 2781, 2786–87, 61 L. Ed. 2d 560 (1979). The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See id.*, 443 U.S. at 319, 99 S. Ct. at 2789. The evidence is examined in the light most favorable to the verdict. *Id.* A successful legal sufficiency challenge will result in rendition of an acquittal by the reviewing court. *See Tibbs v. Florida*, 457 U.S. 31, 41–42, 102 S. Ct. 2211, 2217–18, 72 L. Ed. 2d 652 (1982). This familiar standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789.

Under this standard, we may not sit as a thirteenth juror and substitute our judgment for that of the factfinder by reevaluating the weight and credibility of the evidence. *See Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999); *see also Brooks*, 323 S.W.3d at 899. Instead, we defer to the factfinder's resolution of conflicting evidence unless the resolution is not rational. *See Brooks*, 323 S.W.3d at 899–900. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The duty of a reviewing court is to ensure that the evidence presented actually supports a conclusion that the defendant committed the crime charged. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). Such a charge would include one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

When the record supports conflicting inferences, we presume that the fact finder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Direct and circumstantial evidence are treated equally. *Id.* Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). A conclusion of guilt can rest on the combined and cumulative force of all the incriminating circumstances. *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.–Corpus Christi 2006, no pet.).

**Applicable Law**

As relevant to this case, a person commits the crime of stalking if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, (1) knowingly engages in conduct that constitutes an offense under the harassment statute, or that the actor knows or reasonably should know the other person will regard as threatening bodily injury or death for the other person; (2) causes the other person . . . to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and (3) would cause a reasonable person to fear bodily injury or death for himself or herself. TEX. PENAL CODE ANN. § 42.072(a) (West 2016).

A person commits the crime of harassment if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person initiates communication and in the course of communication makes a comment, request, suggestion or proposal that is obscene or sends repeated electronic communications in a manner reasonably like to harass, annoy, alarm, abuse, torment, embarrass, or offend another. *Id.* § 42.07(a)(1), (7) (West Supp. 2019). "Obscene" means containing a patently offensive description of or a solicitation to commit an ultimate sex act,

including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus, or a description of an excretory function. *Id.* § 42.07(b)(3).

When, as here, the fact finder returns a general guilty verdict on an indictment charging alternative theories of committing the same offense, the verdict stands if the evidence supports any of the theories charged. *Brooks v. State,* 990 S.W.2d 278, 283 (Tex. Crim. App. 1999); *Manuel v. State*, 357 S.W.3d 66, 82 (Tex. App.—Tyler 2011, pet. ref'd).

**The Evidence**

The evidence showed that Appellant entered Coldwell Banker's Tyler office on December 14, 2017, and asked Shanna Williams, a realtor, about listing some property. Williams testified that she was the only one in the office that day and she "got an eerie, uncomfortable feeling" when she saw Appellant. Williams stated that Appellant was "stumbling on his words, what he was saying." When she asked Appellant about the location of the properties he wished to list, Appellant was unable to answer the question. Feeling uncomfortable, Williams gave Appellant her business card and told him that she was in a hurry and needed to leave. Before she left, Williams sent a text message to her coworkers with a picture of Appellant's vehicle, explaining what occurred, and stating that she did not want to speak to him again.

Five days later, on December 19, Williams was working in her office when she heard Keith Hamilton, another realtor in her building, loudly saying, "I have asked you to leave. I am telling you to leave now." Williams testified that she recognized Appellant's voice when he responded to Hamilton and demanded to see her. Williams stated that when she heard Appellant's voice, her main concern was to protect herself and she did not leave her office until she heard Hamilton lock the door. At that point, she saw Appellant getting into his vehicle. Hamilton testified that he took Appellant outside and locked the door while the secretary called the police. When the police arrived, they told Appellant not to return to the property.

Following the December 19 incident, Williams received several vulgar and threatening responses to her "Contact Us" forms on various websites. On January 10, 2018, Appellant, under the name "Brandon Proctor," sent Williams the following messages:

> Under 350k. Ok. 4 or less beadrooms [sic]. 2500 sq ft. I hear your [sic] eager to please if that's the reputation you want out there?
> . . .
> You were referred. You have a reputation of doing whatever it takes to sell something and thats [sic] what I'm counting on. I want be [sic] blown away by your results.

4

Williams testified that she interpreted this message as containing sexual innuendo and being sexually offensive and obscene; specifically, she regarded this message as a suggestion, request, or comment containing a solicitation to commit an ultimate sex act. On January 24, Appellant, using the alias "Courtney Whitker," sent several messages to Williams via the "Contact Us" leads. One message simply states, "looking for properties," while another states, "Your [sic] s[c]rewed leave now." Williams testified that she faced a variety of safety concerns as a realtor, but this message prompted her to think of protecting herself, which included carrying her firearm on her hip "24/7" when she formerly carried the firearm in her purse. As a result of the "Contact Us" messages, Williams ceased those particular advertisements and contacted law enforcement.

On January 30, Appellant sent Williams two sexually explicit photographs. Williams testified that she subsequently received a Facebook message saying, "'I owe you …You will be paid back soon."

During his investigation, Detective Tim McDonald of the Smith County Sheriff's Office traced the messages back to Appellant's IP address. And during an interview with Appellant, Detective McDonald confronted Appellant with the messages. Appellant did not deny sending the messages to Williams and admitted that he may have sent the messages while intoxicated. Appellant told the detective that as many as five to ten personas may have sent messages to Williams. Appellant also told Detective McDonald that he was "jaded," "mad, angry, and irritated" when he sent the messages to Williams. Detective McDonald testified that the message "your [sic] s[c]rewed leave now" would be reasonably interpreted as a threat.

**Analysis**

The indictment alleged Appellant did then and there, and pursuant to the same scheme and course of conduct directed specifically at Williams, knowingly engage in conduct that constituted an offense under Section 42.07 of the Texas Penal Code, namely, with intent to harass, annoy, alarm, abuse, torment, or embarrass Williams by: (1) initiating communication with Williams, and in the course of the communication, making an obscene comment, request, suggestion, and proposal, namely "I hear your [sic] eager to please ....;" (2) sending repeated electronic communications to Williams in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another, namely sexual innuendo; (3) threating Williams in a manner reasonably likely to alarm Williams, to inflict bodily injury on Williams; and (4) initiating communication with Williams, and in the course of the communication, making an obscene

5

comment, request, suggestion, and proposal, namely pornographic images. Each paragraph alleged that Appellant's conduct would cause a reasonable person to, and did cause Williams to, feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

On appeal, Appellant urges that his actions fail to meet the statutory definition of obscenity and, consequently, the evidence is insufficient to support his conviction for stalking because his actions did not violate the harassment statute. By this argument, Appellant challenges only paragraphs one and four of the indictment, which contain the obscenity allegations. Nevertheless, because the jury returned a general guilty verdict on the indictment, which charged alternative theories of committing the same offense, we will not reverse if the evidence supports any of the theories charged. *Manuel*, 357 S.W.3d at 82.

With respect to paragraph four, the State concedes that the two photographs Appellant sent to Williams are not "obscene" as defined by the Texas Penal Code because they do not depict an "ultimate sex act."[1] *See* TEX. PENAL CODE ANN. § 42.07(b)(3). Given the State's concession, we will not address the sufficiency of the evidence as to paragraph four. *See* TEX. R. APP. P. 47.1.

As to paragraph one, a person commits harassment if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene. *See* TEX. PENAL CODE ANN. § 42.07(a)(1). Appellant argues that while his initial messages to Williams were rude and could be construed as making a sexual advance, they are insufficient to support a stalking conviction. The State responds that the January 10 messages contained sexual innuendo and the statement "I want be [sic] blown away by your results" was a request for fellatio, which is an ultimate sex act under the harassment statute. *See id.* § 42.07(b)(3). Considering how closely Appellant's request to be "blown away" followed comments about Williams being "eager to please" and willing to do "whatever it takes," the jury could have reasonably found that Appellant's messages constitute a solicitation to commit an ultimate sex act and are, therefore, obscene for purposes of paragraph one. *See id.* § 42.07(b)(3).

Regarding paragraph two, a person commits harassment if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another.

---

[1] One photograph depicted a female in a sexually suggestive position without underwear and the other photograph depicted a topless female.

*See id*. § 42.07(a)(7). The two photographs Appellant messaged to Williams, while insufficient to meet the definition of obscene for purposes of paragraph four, are nevertheless pertinent to the allegation that Appellant sent repeated electronic communications to Williams. Moreover, the State presented evidence at trial demonstrating that Appellant, over the course of a few weeks, sent several electronic messages, some suggestive, to Williams. In addition to the messages discussed above, in which Appellant made suggestive and threatening statements, Williams testified to receiving "countless emails" and feeling harassed, annoyed, abused, tormented, embarrassed, and offended. Although some of Appellant's messages, while isolated may seem innocuous, the jury could reasonably conclude that he repeatedly sent messages, regardless of their content, with the intent to harass Williams. *See id*. § 42.07(a)(7).

Finally, as to paragraph three, a person commits harassment if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person. *See id*. § 42.07(a)(2). Williams specifically testified that she viewed the "Your [sic] s[c]rewed. Leave now" message as a threat to inflict bodily injury. The jury also heard evidence regarding a message that stated, "You will be paid back." Williams described being "tired of looking over [her] shoulder everywhere [she] went" and carrying her firearm "24/7" in order to protect herself. Based on this evidence, the jury could reasonably conclude that Appellant acted in a manner reasonably likely to alarm Williams and, which in fact, did leave Williams feeling threatened with bodily injury.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence supports findings, beyond a reasonable doubt, that on more than one occasion, pursuant to the same scheme or course of conduct directed specifically at Williams, Appellant knowingly harassed or threatened Williams. *See id*. §§ 42.07(a)(1), (2), (7), 42.072. Therefore, we hold that a rational factfinder could have found that the State proved each essential element of the offense of stalking beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Because the evidence is sufficient to support Appellant's stalking conviction, the trial court properly overruled his motion for directed verdict. We overrule Appellant's first and second issues.

### CHARGE ERROR

In his third issue, Appellant contends the jury charge allowed for a less than unanimous verdict.

7

**Standard of Review**

The review of an alleged jury charge error in a criminal trial is a two-step process. ***Abdnor v. State***, 871 S.W.2d 726, 731 (Tex. Crim. App. 1994). First, an appellate court must determine whether there was error in the jury charge. *Id.* Then, if there is charge error, the court must determine whether there is sufficient harm to require reversal. *Id.* at 731–32. The standard for determining whether there is sufficient harm to require reversal depends on whether the appellant objected to the error at trial. *Id.* at 732.

If the appellant objected to the error, the appellate court must reverse the trial court's judgment when the error "is calculated to injure the rights of the defendant." TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). This means no more than that there must be some harm to the accused from the error. ***Almanza v. State***, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). An appellant who did not raise the error at trial can prevail only if the error is so egregious and created such harm that he has not had a fair and impartial trial. *Id.* "In both situations the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Id.*

The record must show that the defendant suffered actual harm, not merely theoretical harm. *Id.* at 174. In assessing whether the trial court erred by denying a requested defensive instruction, an appellate court must examine the evidence offered in support of the defensive issue in the light most favorable to the defense. ***Farmer v. State***, 411 S.W.3d 901, 906 (Tex. Crim. App. 2013).

Generally, a trial court must deliver to the jury "a written charge distinctly setting forth the law applicable to the case." TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007). The charge must include an instruction on any defensive theory raised by the evidence and properly requested by the defendant. ***Booth v. State***, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). But the trial court has no duty to instruct the jury sua sponte on unrequested defensive issues because they are not "the law applicable to the case." ***Vega v. State***, 394 S.W.3d 514, 519 (Tex. Crim. App. 2013). A defendant who fails to preserve his request for a defensive instruction cannot complain about its omission on appeal because he procedurally defaulted his complaint. *Id.*

**The Jury Charge**

The application paragraph in the jury charge stated the following:

You must decide whether the state has proved, beyond a reasonable doubt, five elements. The elements are that

1. the defendant, in Smith County, Texas, on more than one occasion knowingly engaged in conduct that constitutes the offense of harassment, specifically:

    a. on or about January 10, 2018, with the intent to harass, annoy, alarm, abuse, torment, or embarrass Shanna Williams, the defendant initiated communication with Shanna Williams, and in the course of the communication, make an obscene comment, or request, or suggestion, or proposal, namely, "I hear your eager to please ..."

    b. on or about January 11, 2018, with the intent to harass, annoy, alarm, abuse, torment, or embarrass Shanna Williams, the defendant sent repeated electronic communications to Shanna Williams in a manner reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass another;

    c. on or about January 24, 2018, the defendant, with intent to harass, annoy, alarm, abuse, torment, or embarrass Shanna Williams, threaten to inflict bodily injury on Shanna Williams, in a manner reasonably likely to alarm Shanna Williams; and

    d. on or about January 30, 2018, with intent to harass, annoy, alarm, abuse, torment, or embarrass Shanna Williams, the defendant initiated a communication with Shanna Williams, and in the course of the communication, made an obscene comment, or request, or suggestion, or proposal, namely pornographic images.

2. the conduct was pursuant to the same scheme or course of conduct;
3. the scheme or course of conduct was directed specifically at Shanna Williams; and
4. the conduct on each occasion was conduct that would cause a reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and
5. the conduct on each occasion was conduct that did cause Shanna Williams to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

You must all agree on elements 1 through 5 listed above. You need not all agree on whether the state has proved l.a, l.b, l.c, or l.d., but you must all agree that the state has proved the defendant engaged in conduct that constitutes the offense of harassment against Shanna Williams on more than one occasion.

## Error in the Charge

Appellant argues that the application paragraph allowed the jury to find him guilty without unanimously agreeing on which elements of the offense were committed.

Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed. TEX. CONST. art. V, § 13; *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). Allowing a jury to choose from several separate acts, each of which is a violation of a specific statute, without requiring the jury to agree on which specific act was committed, violates the unanimity requirement. *Ngo v. State*, 175 S.W.3d 738, 747-48 (Tex. Crim. App. 2005). However, the unanimity requirement is not violated by instructing the jury on alternative theories of committing the same offense, in contrast to instructing the jury on two separate offenses involving separate incidents. *Martinez v. State*, 129 S.W.3d 101, 103 (Tex. Crim. App. 2004). If an indictment alleges differing means of committing an offense, a trial court does not err by

charging the jury in the disjunctive. *Jones v. State*, 184 S.W.3d 915, 922 n.6 (Tex. App.—Austin 2006, no pet.).

"[I]t has long been the general rule that when a single crime can be committed in various ways, jurors need not agree upon the mode of commission." *Francis v. State,* 36 S.W.3d 121, 124 (Tex. Crim. App. 2000). When alternate manners and means of committing an offense are submitted to the jury in the disjunctive, it is appropriate for the jury to return a general verdict for that offense if the evidence supports a conviction under any one of them. *Kitchens v. State,* 823 S.W.2d 256, 258 (Tex. Crim. App. 1991); *Marinos v. State,* 186 S.W.3d 167, 175 (Tex. App.—Austin 2006, no pet.); *Garcia v. State*, 212 S.W.3d 877, 886 (Tex. App.—Austin 2006, no pet.).

As explained above, the State alleged and presented evidence of three different ways in which Appellant harassed or threatened Williams under the stalking statute. Because the offense of stalking could be committed in various ways, it was not necessary that the jurors agree upon the mode of commission and it was appropriate for the jury to return a general verdict. *See Kitchens,* 823 S.W.2d at 258; *see also Francis,* 36 S.W.3d at 124. And we have determined that the evidence is sufficient to support a conviction under paragraphs one, two, and three of the indictment. In a case such as this, in which the State alleges different manners or means of committing a single offense, the unanimity requirement is satisfied. *See Marinos*, 186 S.W.3d at 175; *Garcia*, 212 S.W.3d at 886. We overrule Appellant's third issue.

## DISPOSITION

Having overruled Appellant's first, second, and third issues, we *affirm* the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered February 19, 2020.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

FEBRUARY 19, 2020

NO. 12-18-00351-CR

**DANNY SHANE LAFAITT,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 114th District Court

of Smith County, Texas (Tr.Ct.No. 114-0750-18)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that the decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*