TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-05-00345-CR






Leonardo Martinez, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT

NO. 3041030, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING





O P I N I O N




 A jury found appellant Leonardo Martinez guilty of the offenses of aggravated sexual
assault of a child, indecency with a child by contact, and indecency with a child by exposure. See
Tex. Pen. Code Ann. §§ 21.11 (indecency with a child), 22.021(a)(1)(B) (aggravated sexual assault
of a child) (West 2003 & Supp. 2005). Martinez argues that the court's charge permitted the jury
to convict him of each offense with less than a unanimous verdict and that this error requires
reversal. Martinez also asserts that his right against double jeopardy was violated and that the
district court erred in excluding testimony that the victim may have been molested by an alternative
perpetrator. We will affirm the judgment of the district court.


BACKGROUND


 The jury heard evidence that on March 26, 2004, eight-year-old L.Z. told her mother
that Martinez had sexually abused her. Martinez is the husband of L.Z.'s cousin, Rosie Prado. L.Z.
testified that the abuse happened on more than one occasion when she stayed overnight at her
cousin's apartment. L.Z. testified that she slept on the floor in her cousin's room, and that she would
sometimes wake up in the middle of the night with her panties pulled down and Martinez doing "bad
things" to her. L.Z. testified that sometimes Martinez would penetrate her anus and that, other times,
Martinez would touch her genitals and her anus. Leticia Gomez, L.Z.'s mother, testified that L.Z.
told her that Martinez was placing his penis "behind her" anus and that he was touching her "private
part" and her anus. Gomez testified that, following L.Z.'s outcry, she called the police to report the
incident.

 Dr. Beth Nauert, a pediatrician and the medical director of the Child Assessment
Program, a clinic that conducts medical examinations for children who are suspected of having been
physically or sexually abused, interviewed L.Z. about the abuse. Nauert testified that L.Z. told her
about multiple times that Martinez abused her, including a time when Martinez put his hand in L.Z.'s
vagina, another time when Martinez put what was either his finger or his penis in her mouth, and
another time when Martinez penetrated her anus.

 Alia Alsafar, a forensic interviewer with the Center for Child Protection (formerly
the Children's Advocacy Center), also interviewed L.Z. and testified about the incidents of abuse
that L.Z. described to her. Alsafar testified that L.Z. told her about how Martinez "had put his thing
in her back and made her touch his thing with her hand, as well as touched her middle part with his
hand." When asked by the State how many times these incidents occurred, Alsafar replied, "She
didn't indicate the exact amount of times, but did tell me it happened a lot, or more than once."

 On June 14, 2004, the State indicted Martinez on one count of aggravated sexual
assault of a child, one count of indecency with a child by contact, and one count of indecency with
a child by exposure. Count one, alleging aggravated sexual assault, contained two paragraphs
alleging that Martinez, on or about January 1, 2004,


did then and there knowingly and intentionally cause the penetration of the anus of
[L.Z.], a child younger than 14 years of age and not his spouse, by the sexual organ
of the said Leonardo Martinez,


did then and there knowingly and intentionally cause the anus of [L.Z.], a child
younger than 14 years of age and not his spouse to contact the sexual organ of the
said Leonardo Martinez.



Count two, alleging indecency with a child by contact, contained three paragraphs alleging that
Martinez, on or about January 1, 2004,


did then and there intentionally and knowingly engage in sexual contact with [L.Z.],
a child younger than 17 years of age and not the spouse of the said Leonardo
Martinez, by then and there touching the anus of the said [L.Z.] with the intent to
arouse and gratify the sexual desire of said Leonardo Martinez,


did then and there intentionally and knowingly engage in sexual contact with [L.Z.],
a child younger than 17 years of age and not the spouse of the said Leonardo
Martinez, by then and there touching the genitals of the said [L.Z.] with the intent to
arouse and gratify the sexual desire of said Leonardo Martinez,


did then and there, with the intent to arouse and gratify his sexual desire, knowingly
and intentionally engage in sexual contact by causing [L.Z.], a child younger than 17
years of age and not the spouse of the said Leonardo Martinez, to touch the genitals
of the said Leonardo Martinez.



Count three, alleging indecency with a child by exposure, contained three paragraphs alleging that
Martinez, on or about January 1, 2004,

did then and there with the intent to arouse and gratify the sexual desire of said
Leonardo Martinez, intentionally and knowingly expose to [L.Z.], a child younger
than 17 years of age and not the spouse of the said Leonardo Martinez, any part of
the genitals of the said Leonardo Martinez, the said Leonardo Martinez then and there
knowing that the said [L.Z.] was present,


did then and there with the intent to arouse and gratify the sexual desire of said
Leonardo Martinez, knowingly and intentionally cause [L.Z.], a child younger than
17 years and not the spouse of the said Leonardo Martinez, to expose her anus,


did then and there with the intent to arouse and gratify the sexual desire of said
Leonardo Martinez, knowingly and intentionally cause [L.Z.], a child younger than
17 years and not the spouse of the said Leonardo Martinez, to expose any part of her
genitals.



 Martinez pleaded not guilty to each offense. During trial, he vigorously denied
abusing L.Z. in any way. On direct examination, he testified:


Q: Sir, did you molest that girl, [L.Z.], in any way?


A: No, sir.



On cross-examination, Martinez stated that he "never touched her" and repeatedly denied both
contacting and penetrating L.Z.:


Q: Isn't it true, Mr. Martinez, that you put your penis in [L.Z's] anus on numerous
occasions?


A: It's not true.


Q: Isn't it true you touched her on her vagina with your hand on repeated
occasions?


A: Absolutely no way, ma'am.


Q: Isn't it true you made her touch your penis?


A: Of course not, ma'am.


Q: And isn't it true that you exposed [L.Z.'s] genitals and your own genitals in her
presence?


A: Of course not, ma'am. 



 In addition to denying the allegations, Martinez's trial strategy apparently included
suggesting that the complainant's brother may have been the actual perpetrator. However, the
district court did not allow any testimony to that effect, so the jury heard no evidence implicating the
victim's brother in the crimes.

 The jury found Martinez guilty on all three counts of the indictment, and punishment
was assessed at fifty-seven years' confinement for count one, twenty years' confinement for count
two, and twenty years' confinement for count three. This appeal followed.


DISCUSSION


 In three issues on appeal, Martinez contends that: (1) the charge permitted the jury
to convict him of each offense with less than a unanimous verdict; (2) the multiple convictions
violated his right against double jeopardy; and (3) the trial court erred in excluding evidence that the
complainant may have been abused by her brother. 


Jury unanimity

 In his first issue on appeal, Martinez contends that the charge of the court permitted
the jury to convict him of each offense with less than a unanimous verdict and that this error requires
reversal. The Texas Constitution requires a unanimous verdict in felony criminal cases. Tex. Const.
art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2005). Allowing a jury to choose
from several separate acts, each of which is a violation of a specific statute, without requiring the
jury to agree on which act was committed violates the unanimity requirement. Ngo v. State, 175
S.W.3d 738, 747-48 (Tex. Crim. App. 2005); Francis v. State, 36 S.W.3d 121, 124-25 (Tex. Crim.
App. 2000). However, allowing a jury to choose between alternative theories of how an offense was
committed does not run afoul of the unanimous-verdict requirement. Martinez v. State, 129 S.W.3d
101, 103 (Tex. Crim. App. 2004); Kitchens v. State, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991). 
If an indictment alleges differing means of committing an offense, a trial court does not err by
charging the jury in the disjunctive. Jones v. State, 184 S.W.3d 915, 922 n.6 (Tex. App.--Austin
2006, no pet.).

 In analyzing a jury-charge issue, the reviewing court first decides whether error exists. 
Ngo, 175 S.W.3d at 743. Then, if error exists, the court analyzes that error for harm. Id.


 Whether the charge was erroneous

 The State concedes that the paragraphs of the court's charge pertaining to the offenses
of indecency with a child by contact and indecency with a child by exposure violate the requirement
of jury unanimity. However, the State disputes whether there is error in the paragraph of the court's
charge regarding the remaining offense, aggravated sexual assault of a child.

 The court's charge to the jury read, in relevant part:


[I]f you believe from the evidence beyond a reasonable doubt that the defendant,
Leonardo Martinez, on or about the 1st day of January, 2004, in the County of Travis,
and State of Texas, did then and there knowingly or intentionally cause the
penetration of the anus of [L.Z.], a child younger than 14 years of age and not his
spouse, by the sexual organ of the said Leonardo Martinez, or if you believe from the
evidence beyond a reasonable doubt that the defendant, Leonardo Martinez, did then
and there knowingly or intentionally cause the anus of [L.Z.], a child younger than
14 years of age and not his spouse, to contact the sexual organ of the said Leonardo
Martinez, you will find the defendant guilty of the offense of Aggravated Sexual
Assault of a Child . . . .



(Emphasis added).

 Martinez argues that the instruction allowed the jury to return a non-unanimous
verdict. According to Martinez, penetration and contact are separate and distinct acts. He contends
that it is possible that only some of the jurors may have believed beyond a reasonable doubt that he
was guilty of penetration, while other jurors may have believed beyond a reasonable doubt that
Martinez was guilty of contact. Therefore, Martinez reasons, the jury could have found Martinez
guilty of aggravated sexual assault without agreeing on the specific act that he committed. 

 Aggravated sexual assault is defined in section 22.021 of the penal code:


(a) A person commits an offense:


 (1) if the person:


 . . . .


 (B) intentionally or knowingly:


 (i) causes the penetration of the anus or female sexual organ of a
child by any means;

 

 (ii) causes the penetration of the mouth of a child by the sexual organ
of the actor;


 (iii) causes the sexual organ of a child to contact or penetrate the
mouth, anus, or sexual organ of another person, including the
actor; or


 (iv) causes the anus of a child to contact the mouth, anus, or sexual
organ of another person, including the actor; and


 . . . .


 (2) if:


 . . . .


 (B) the victim is younger than 14 years of age.



Tex. Pen. Code Ann. § 22.021.

 In Vick v. State, 991 S.W.2d 830 (Tex. Crim. App. 1999), the court of criminal
appeals explained that: 


Article 22.021 is a conduct-oriented offense in which the legislature criminalized
very specific conduct of several different types. Also, the statute expressly and
impliedly separates the sections by "or," which is some indication that any one of
the proscribed conduct provisions constitutes an offense. A more compelling
demonstration of legislative intent is reflected in the specific conduct prohibited in
the four sections applicable to this case. Section (i) prohibits penetration of a male
or female child's anus or the sexual organ of a female child. The focus is on
penetration of the child's genital area. Somewhat related is section (ii), which
prohibits penetration of the child's mouth by the defendant's sexual organ. Both
section (i) and section (ii) concern penetration of the child, one focusing on the
genital area, and the other on the mouth. In contrast, sections (iii) and (iv) address
penetration and contact of another in a sexual fashion, by the sexual organ or anus
of the child. The statute criminalizes many types of sexually assaultive conduct with
a child. Yet, each section usually entails different and separate acts to commit the
various, prohibited conduct. This specificity reflects the legislature's intent to
separately and distinctly criminalize any act which constitutes the proscribed conduct.
An offense is complete when a person commits any one of the proscribed acts. In
sum, Art. 22.021 is a conduct-oriented statute; it uses the conjunctive "or" to
distinguish and separate different conduct; and its various sections specifically define
sexual conduct in ways that usually require different and distinct acts to commit.
These considerations lead us to conclude that the Legislature intended that each
separately described conduct constitutes a separate statutory offense.


Id. at 832-33. Our reading of Vick leads us to conclude that, on the record in this case, penetrating
the child's anus and contacting the child's anus must be considered separate and distinct offenses.

 The State argues that both penetration and contact resulted from the same incident,
and that in order for any juror to find that Martinez penetrated the victim's anus, that juror must have
necessarily found that Martinez also contacted the victim's anus. In other words, before Martinez
could penetrate the victim, he must have first contacted her and, therefore, the offense of contact was
subsumed in the offense of penetration. (1) See Barnes v. State, 165 S.W.3d 75, 88 (Tex. App.--Austin
2005, no pet.); Hendrix v. State, 150 S.W.3d 839, 848 (Tex. App.--Houston [14th Dist.] 2004, pet.
ref'd).

 The State's argument might have merit in a case in which there is evidence of only
a single act, and that single act involves penetration. See Patterson v. State, 152 S.W.3d 88, 92 (Tex.
Crim. App. 2004); Hendrix, 150 S.W.3d at 848; see also Francis, 36 S.W.3d at 128 (Johnson, J.,
concurring) ("The indictment against appellant contained one count of indecency with a child,
alleging two kinds of contact on the same date. The indictment was valid on its face; if both types
of contact occurred at the same time, they would comprise a single act."). In this case, however,
there was evidence of more than one act involving contact, and those acts did not always involve
penetration. L.Z.'s mother testified that L.Z. told her that the abuse happened "more than one time."
L.Z. also testified that the abuse happened on more than one occasion, and that the abuse was
"different sometimes":


Q: This happened more than one time, right?


A: Yes.


Q: Was it the same every time, or was it different sometimes?


A: Different sometimes.


Q: Okay. Sometimes did something other than the middle part being in the butt
happen? You can answer yes or no to that. Do you know the answer, or are you
afraid to say?


A: Can you repeat the question?


Q: Yes. Sometimes did something happen other than the middle part of [Martinez]
being in the butt?


A: Yes.


. . . .


Q: We will go slow, okay. Did [Martinez's] hand touch any parts of [L.Z.] that it
shouldn't have touched?


A: Yes.


Q: Did it touch the heart?


A: No.


Q: Did it touch [L.Z.'s] middle part?


A: Yes.


Q: And was the hand of [Martinez] moving or not moving when it touched the
middle part of [L.Z.]?


A: Moving.


Q: Did the hands of [Martinez] touch the butt of [L.Z.]?


A: Yes.


Q: Was it moving or not moving?


A: It was moving.


Q: Did the hand -- any part of the hand go inside of [L.Z.'s] middle part?


A: No.


Q: Did any part of the hand go inside of [L.Z.'s] butt?


A: No.



This testimony is evidence that Martinez contacted or penetrated L.Z., or did both, on separate
occasions. 

 Alia Alsafar, a forensic interviewer with the Center for Child Protection, testified that
L.Z. told her that the abuse "happened on more than one occasion," and that sometimes the abuse
involved penetration:


Q: Did you ask [L.Z.] whether or not the thingy that was in her back was something
that went inside or outside her body?


A: Yes.


Q: And what did she say to that?


A: She told me it went inside her back.



Alsafar also testified, however, that L.Z. indicated that on other occasions the abuse did not involve
penetration:


Q: The third general area that she talked about was the defendant -- or [Martinez]
touching her middle part with his hand?


A: Yes.


Q: What did she specifically tell you about that?


A: She pointed to her own vagina and stated he put his whole hand on this part, or
she referred to it as her middle part, inside her clothes but outside her vagina.



 Other evidence of contact separate from penetration included the testimony of Dr.
William Carter, a licensed psychologist, who reviewed L.Z.'s case history. Carter testified about the
consistency and veracity of the details in L.Z.'s outcry. One of the statements L.Z. made in her
outcry that Carter testified to was "someone touching her butt." "Touching" implies contact, and
not necessarily penetration. 

 Consistent with the evidence we have reviewed, the State argued in closing--contrary
to its current position on appeal--that there was evidence of more than one act: "And when [did it
happen]? More than one time. She has always said it happened more than one time."

 Because there was evidence of multiple acts of aggravated sexual assault in this case,
some of which only involved contact and not penetration, we cannot conclude from this record that
the offense of contact was subsumed in the offense of penetration. We hold that the paragraph of
the court's charge instructing the jury on aggravated sexual assault was erroneous. (2) There is a
"reasonable possibility" that the verdict was not unanimous--that some members of the jury
convicted Martinez of the offense of penetrating the victim's anus during a particular episode while
other jurors convicted him of the offense of contacting the victim's anus at another time. See
Francis v. State, 36 S.W.3d at 125.


 Whether the error requires reversal

 Having concluded that the aggravated-sexual-assault charge failed to require jury
unanimity, and because the State has conceded that both indecency-with-a-child charges failed to
require jury unanimity, we now address whether the charge error regarding all three offenses requires
reversal of Martinez's conviction. We will address the offenses together.

 The degree of harm from charge error requiring reversal depends on whether the
appellant preserved the error by objection. Middleton v. State, 125 S.W.3d 450, 453 (Tex. Crim.
App. 2003). Where, as here, the appellant failed to object, we will not reverse for jury-charge error
unless the record shows "egregious harm" to the defendant. (3) Bluitt v. State, 137 S.W.3d 51, 53 (Tex.
Crim. App. 2004); Almanza v. State, 686 S.W.2d 157 (Tex. Crim. App. 1985). Errors that result in
egregious harm are those that affect "the very basis of the case," "deprive the defendant of a valuable
right," or "vitally affect a defensive theory." Hutch v. State, 922 S.W.2d 166, 171 (Tex. Crim. App.
1996). In making an egregious harm determination, reviewing courts assess the degree of harm in
light of the entire jury charge, the state of the evidence, including the contested issues and weight
of probative evidence, the arguments of counsel, and all other relevant information revealed by the
record as a whole. Ellison v. State, 86 S.W.3d 226, 228 (Tex. Crim. App. 2002).

 Having reviewed the entire record, we find no egregious harm. Martinez argues that
there was egregious harm during the State's closing argument, when the State explained to the jury
the difference between penetration and contact in the charge paragraph on aggravated sexual assault. 
At one point, the prosecutor stated, "If you decide yes on either one of those segments, you are going
to come back to the first verdict form, and you are going to put guilty in there, and you are going to
sign it, and then you are going to go back to the third page." Then, when discussing the different
offenses in the charge paragraphs on indecency with a child, the prosecutor stated, "If you find any
of those to be true, then you go to the last verdict form, and you put guilty." In neither instance did
the State remind the jury that it needed to reach a unanimous verdict on whichever offense it
believed Martinez to be guilty.

 We do not believe the prosecutor's comments rise to the level of egregious harm
presented in Ngo. In Ngo, the jury was repeatedly told, by both the prosecutor and the judge, that
it need not reach a unanimous verdict. See Ngo at 750-51. Here, the jury was never explicitly told
that its verdict need not be unanimous and, in fact, was instructed in the last paragraph of the charge
that its verdict "must be unanimous." See Hutch, 922 S.W.2d at 170 (absent contrary evidence, court
presumes jury followed law provided by charge).

 The state of the evidence, including contested issues, also persuades us that the charge
error did not cause egregious harm. The State introduced sufficient evidence supporting each of the
separate acts in the charge. This evidence, which is not contested by Martinez on appeal, included
extensive testimony by the complainant, her mother, and two witnesses who interviewed the
complainant and testified in great detail about the alleged abuse.

 Furthermore, during trial Martinez did not argue that he was guilty of some of the acts
alleged but not others. Rather, Martinez's defensive theory was that he did not commit any of the
acts the State charged him with. He did not attempt to draw a distinction between contact and
penetration in the aggravated sexual assault allegation, nor did he attempt to draw distinctions
between the separate acts in the indecency allegations. Martinez's trial strategy left the jury with an
all-or-nothing decision when evaluating each count in the charge--for example, either he was guilty
of aggravated sexual assault, or he was not. The charge error would not have impacted the jury's
resolution of this issue.

 Finally, unlike in Ngo, where two of the offenses were mutually exclusive, see Ngo,
175 S.W.3d at 751-52 (defendant could not have committed both original theft of credit card and
received same credit card from someone else who had stolen it), none of the acts in this case were
mutually exclusive. For example, it was possible for Martinez to both contact and penetrate the
victim on separate occasions and, in fact, the State presented sufficient evidence of each act.

 Unlike the charge error in Ngo, the charge error in this case did not go to "the very
basis of the case," "deprive the defendant of a valuable right," or "vitally affect a defensive theory"
to a degree that Texas courts heretofore have considered egregious harm. See Ngo, 175 S.W.3d at
750. We conclude, therefore, that Martinez did not suffer egregious harm as a result of the charge
error. We overrule his first issue.


Double jeopardy

 In his second issue, Martinez contends that the jury could have found that Martinez
committed both aggravated sexual assault by contact and indecency with a child by contact, and that
this would constitute multiple punishment in violation of the Double Jeopardy Clause. See Illinois
v. Vitale, 447 U.S. 410, 415 (1980); Cervantes v. State, 815 S.W.2d 569, 572 (Tex. Crim. App.
1991); Barnes, 165 S.W.3d at 87. We first note that Martinez did not make a double jeopardy
objection at trial. Therefore, the face of the trial record must clearly show a double jeopardy
violation before we may address this issue. See Langs v. State, 183 S.W.3d 680, 687 (Tex. Crim.
App. 2006) (citing Gonzalez v. State, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000)). The court of
criminal appeals has held that: 


[W]hen separate theories for an offense are issued to the jury disjunctively, a double
jeopardy violation is not clearly apparent on the face of the record if one of the
theories charged would not constitute a double jeopardy violation and there is
sufficient evidence to support that valid theory. The fact that the jury's verdict could
have relied on a theory that would violate the Double Jeopardy Clause, is not
sufficient to show a constitutional violation clearly apparent on the face of the record.



Id.

 In this case, it is not clearly apparent on the face of the record that there was a double
jeopardy violation. L.Z. testified at trial to multiple instances of sexual abuse, and not all instances
involved the same conduct. Specifically, L.Z. testified that Martinez: (1) penetrated her anus; (2)
touched her anus; (3) touched her vagina; (4) made her touch his penis; (4) placed his penis in her
mouth; and (5) exposed his penis to her. Because there is evidence of each of these separate acts,
valid theories for the multiple convictions exist that do not violate double jeopardy. For example, 
if the jury found that Martinez contacted L.Z.'s anus under the aggravated-sexual-assault charge, the
jury could have separately found that Martinez contacted L.Z.'s vagina under the indecency-by-contact charge.

 In order to prevail on a double jeopardy claim, the evidence must show that the two
offenses at issue necessarily arose from "one act which could be subject to two different
interpretations." Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); Martinez v. State,
161 S.W.3d 697, 705 (Tex. App.--Austin 2005, pet. granted). Martinez has not demonstrated that
his conviction of indecency with a child by contact was based on the same conduct underlying his
conviction for aggravated sexual assault of a child. Hutchins v. State, 992 S.W.2d 629, 633 (Tex.
App.--Austin 1999, pet. ref'd). Therefore, he has failed to show a double jeopardy violation. We
overrule Martinez's second issue.


Alternative perpetrator evidence 

 In his third issue on appeal, Martinez asserts that the district court's exclusion of
"alternative perpetrator evidence" violated his right to present a complete defense and his right to
confrontation. (4) Martinez attempted to present evidence that L.Z.'s brother, F.Z., had sexually
molested her. Martinez's attorney informed the district court that this evidence was necessary to:
(1) present his theory that L.Z.'s brother was the actual perpetrator; and (2) discredit the testimony
of L.Z.'s mother by alleging that she was testifying against Martinez in order to protect her son from
prosecution. The district court sustained the State's objection to this evidence. When the court made
its final ruling on this issue, Martinez's attorney noted his objection. (5)

 Evidentiary rulings rarely rise to the level of denying the fundamental constitutional
right to present a meaningful defense. Potier v. State, 68 S.W.3d 657, 659 (Tex. Crim. App. 2002). 
A trial court's ruling excluding evidence may rise to the level of a constitutional violation if the
ruling excludes otherwise relevant and reliable evidence which "forms such a vital portion of the
case that exclusion effectively precludes the defendant from presenting a defense." Wiley v. State,
74 S.W.3d 399, 405 (Tex. Crim. App. 2002). Regarding "alternative perpetrator evidence," although
a defendant has the right to attempt to establish his innocence by showing that someone else
committed the crime, he still must show that his proffered evidence regarding the alleged alternative
perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a
nexus between the crime charged and the alleged "alternative perpetrator." Id.

 Even though evidentiary rulings are ordinarily reviewed for an abuse of discretion,
see Weatherred v. State, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000), we review constitutional
issues de novo. See Lilly v. Virginia, 527 U.S. 116, 137 (1999); Campos v. State, 186 S.W.3d 93,
96 (Tex. App.--Houston [1st Dist.] 2005, no pet.); Davis v. State, 169 S.W.3d 660, 665 (Tex.
App.--Austin 2005, pet. granted); Wilson v. State, 151 S.W.3d 694, 697 (Tex. App.--Fort Worth
2004, pet. ref'd); Muttoni v. State, 25 S.W.3d 300, 304 (Tex. App.--Austin 2000, no pet.). But see
Miller v. State, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001) (applying abuse-of-discretion standard
of review to case in which right to present complete defense was implicated). 

 Based on our review of the record, Martinez has failed to demonstrate the required
nexus between L.Z.'s brother and the crime charged. At the conclusion of L.Z.'s testimony,
Martinez's attorney examined her on voir dire about her brother. The attorney first asked L.Z. if her
brother ever did any "bad things" to her. L.Z. replied, "No." The attorney then asked about a time
when L.Z. was younger and she would "play doctor" with her older brother. L.Z. testified that her
brother would play the doctor and L.Z. would play the patient. L.Z. testified that, one time, her
brother placed a play stethoscope on her chest to check on her heart. L.Z. testified that nothing
inappropriate happened:


Q: So when you were playing doctor, did your brother ever look at any other parts
of your body that were injured?


A: No.


Q: While you are playing doctor any other time, did your brother ever touch you in
any way that was a little bit wrong?


A: No.



L.Z. also testified that her brother tried to hug her, but that he did nothing else to her:



Q: And when he hugged you, did he rub your head?


A: (Nods negatively).


Q: Did he rub your ear?


A: No.


Q: Did he tickle you?


A: (Nods negatively).


Q: Did he rub your chest somehow?


A: He just hugged me. That's all.


Q: Was it for a long time or a little time?


A: A little time.


Q: Did he say anything when he hugged you?


A: No.



 Leticia Gomez, L.Z.'s mother, was also examined on voir dire about this incident. 
Gomez testified that the year before L.Z. made the allegations against Martinez, she was concerned
that her son was inappropriately touching L.Z. Gomez testified that she was concerned because her
older daughter, N.Z., told her that F.Z. was touching L.Z. during their doctor-patient play sessions. 
However, Gomez also testified that she no longer believes anything inappropriate happened between
her children.

 Martinez's attorney also examined on voir dire Belen Prado, L.Z.'s aunt, about the
incident. Prado testified:


Q: Just so I'm clear, did [L.Z.'s mother] ever indicate to you that she thought that
her son was the perpetrator of this sexual abuse against [L.Z.] that occurred last
year, or was that a separate issue?


A: That was a separate issue. That is another thing that happened three years [ago],
and that happened in Arlington, Texas.


Q: So to be clear, this does not have -- you are not saying that you believe that
Leonardo Martinez is innocent of these charges?


A: That's right. 



 In ruling that evidence about the incident between L.Z. and her brother would not be
admitted, the district court stated:


Well, I don't find that incident to be relevant. It is not in the same time and place of
this incident, and it is not describing anything inappropriate that this Court can see. 
It is only hugging her from behind, and the sister didn't think that was appropriate. 
There was no criminal conduct described, no intimate behavior described, and it has
nothing to do with what we are here on.



 We conclude that excluding this evidence did not violate Martinez's right to present
a complete defense. The proffered evidence fails to establish a connection between L.Z.'s brother
and the abuse L.Z. alleged. Any suggestion that L.Z.'s brother was an alternative perpetrator is "both
meager and speculative." See Wiley, 74 S.W.3d at 406. "It is not sufficient for a defendant merely
to offer up unsupported speculation that another person may have done the crime. Such speculative
blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based
on emotion or prejudice." Michaelwicz v. State, 186 S.W.3d 601, 617 (Tex. App.--Austin 2006,
pet. ref'd) (quoting United States v. McVeigh, 153 F.3d 1166, 1191 (10th Cir. 1998)).


 Right to confrontation

 Martinez also argues that excluding the evidence about L.Z.'s brother prevented him
from cross-examining L.Z.'s mother about whether her testimony was biased against Martinez in an
effort to protect her son from prosecution.

 The Confrontation Clause of the U.S. Constitution guarantees a defendant the right
to cross-examine witnesses. Crawford v. Washington, 541 U.S. 36, 42 (2004); Delaware v. Van
Arsdall, 475 U.S. 673, 678 (1986); Carroll v. State, 916 S.W.2d 494, 496-97 (Tex. Crim. App.
1996). A defendant may cross-examine a witness on any subject "reasonably calculated to expose
a motive, bias[,] or interest for the witness to testify." Carroll, 916 S.W.2d at 497. However, the
trial court has considerable discretion in determining how and when bias may be proved, and what
collateral evidence is material for that purpose. Dihn Tan Ho v. State, 171 S.W.3d 295, 304 (Tex.
App.--Houston [14th Dist.] 2005, pet. ref'd). The trial court has the discretion to limit the scope
of cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the
witness, and the injection of cumulative or collateral evidence. Van Arsdall, 475 U.S. at 679; Stults
v. State, 23 S.W.3d 198, 204 (Tex. App.--Houston [14th Dist.] 2000, pet. ref'd). Courts must
examine each case on an individual basis to determine whether the Confrontation Clause demands
the admissibility of certain evidence. Lopez v. State, 18 S.W.3d 220, 225 (Tex. Crim. App. 2000). 
In making this determination, the court should balance the probative value of the evidence sought
to be introduced against the risk its admission may entail. Id. at 222.

 During voir dire, L.Z.'s mother testified:


Q: You sure don't want to see your son get in any trouble, do you?


A: Of course not.


Q: You would protect your son from getting into some kind of trouble, wouldn't
you?


A: That's right.



 This particular testimony was only relevant to the extent evidence that L.Z.'s brother
may have been an alternative perpetrator was relevant. Because we have already concluded that
Martinez failed to establish a nexus between L.Z.'s brother and the acts alleged, we also conclude
that evidence of L.Z.'s mother's desire to protect her son is not probative of any issue relevant to the
case. Admitting the testimony would risk confusing the jury about an irrelevant issue. Therefore,
excluding the testimony did not violate Martinez's right to confront and cross-examine L.Z.'s
mother. We overrule Martinez's third issue.


CONCLUSION


 Having overruled all of Martinez's issues on appeal, we affirm the judgment of the
district court.



 

 Bob Pemberton, Justice

Before Chief Justice Law, Justices Patterson and Pemberton

Affirmed

Filed: June 9, 2006

Publish
1. The State also argues that Martinez is confusing the issue of jury unanimity with the issue
of election. We disagree. When an indictment charges a single offense and the evidence shows that
two or more acts fulfill all the elements of the charged offense, the State is required to elect which
act it will rely upon to secure a conviction, provided that the accused makes a motion for election. 
See Scoggan v. State, 799 S.W.2d 679, 680 n.3 (Tex. Crim. App. 1990); Moore v. State, 143 S.W.3d
305, 312 (Tex. App.--Waco 2004, pet. ref'd). The rule regarding election is not applicable in this
case, however, because we ultimately conclude that the indictment alleged multiple offenses. See
Brantley v. State, 48 S.W.3d 318, 322 n. 1 (Tex. App.--Waco 2001, pet. ref'd).


 We also note that even if Martinez should have requested an election in this case, our
analysis of the jury unanimity issue would not change. As the court observed in Ngo:


A request for an election, however, is not a prerequisite for implementing Texas'
constitutional and statutory requirement of jury unanimity. An election simply
limits the number of specific offenses that the jury may consider during its
deliberations. Appellant's failure to request an election means that the jury may
be instructed on several different criminal acts in the disjunctive, but it will still
be instructed that it must unanimously agree on one specific criminal act. As the
State correctly points out, one of the purposes of requiring an election is "to
ensure unanimous verdicts, that is, all of the jurors agreeing that one specific
incident, which constituted the offense charged in the indictment, occurred[.]"
But the converse is not true. The failure to request an election does not eliminate
a defendant's right to a unanimous verdict. 


Ngo v. State, 175 S.W.3d 738, 748 (Tex. Crim. App. 2005) (internal citations omitted).
2. In accordance with Ngo, we emphasize that it is not error to submit the separate offenses
of contact and penetration "disjunctively." Rather, the error "is in failing to instruct the jury that it
must be unanimous in deciding which one (or more) of the [two] disjunctively submitted offenses
it found appellant committed." Ngo, 175 S.W.3d at 749.
3. Martinez asserts that the charge error is a "structural error," and thus should not be subject
to a harmless error analysis. We disagree. A structural error is a "defect affecting the framework
within which the trial proceeds, rather than simply an error in the trial process itself." Arizona v.
Fulminante, 499 U.S. 279, 310 (1991). The court of criminal appeals has held that structural errors
are "federal constitutional errors labeled by the United States Supreme Court as such." Johnson v.
State, 169 S.W.3d 223, 235 (Tex. Crim. App. 2005). The Supreme Court has found structural error
only in a "very limited class of cases": the total deprivation of counsel at trial, lack of an impartial
trial judge, the unlawful exclusion of members of the defendant's race from a grand jury, the denial
of the right to self-representation at trial, the denial of the right to a public trial, and an instruction
that erroneously lowers the burden of proof for conviction below the "beyond a reasonable doubt"
standard. Johnson v. United States, 520 U.S. 461, 468-69 (1997). The court of criminal appeals has
expressly held that "[j]ury charge error is not structural error and therefore must be reviewed for
harm." Trevino v. State, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003). We are bound by Trevino
unless and until a higher court tells us otherwise.
4. Persons accused of crimes are guaranteed a meaningful opportunity to present a complete
defense by the Sixth and Fourteenth Amendments to the United States Constitution. Crane v.
Kentucky, 476 U.S. 683, 690 (1986). These same amendments also guarantee a criminal defendant
the right to confront the witnesses against him. Shelby v. State, 819 S.W.2d 544, 546 (Tex. Crim.
App. 1991). 
5. We conclude that Martinez preserved error on this issue by: (1) informing the trial court
of the substance of the evidence sought to be admitted; and (2) informing the trial court of the legal
grounds for the admission of the evidence. See Willover v. State, 70 S.W.3d 841, 845 n. 4 (Tex.
Crim. App. 2002) ("Whichever party complains on appeal about the trial judge's action must, at the
earliest opportunity, have done everything necessary to bring to the judge's attention the evidence
rule in question and its precise and proper application to the evidence in question.").