# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00733-CR

**Alan Hudson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. 3012894, HONORABLE DONALD LEONARD, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Alan Hudson of the offenses of indecency with a child by exposure and indecency with a child by contact. *See* Tex. Pen. Code Ann. 21.11 (West 2003). In seven issues on appeal, Hudson claims double jeopardy violations, insufficient evidence of identity and contact, charge error regarding punishment, ineffective assistance, and abuse of discretion in failure to grant a new trial based on newly discovered evidence. We will affirm the judgment of the district court.

### BACKGROUND

The jury heard evidence that M.C. was sexually abused by Hudson, her mother's boyfriend, when she was seven years old and he was 30. M.C. testified regarding two different incidents. At the time of the incidents M.C. lived with her mother, Mary; her mother's boyfriend, Hudson; Hudson's daughter from a previous relationship; and Hudson and Mary's infant son.

The first incident allegedly occurred in June 2001 when M.C., who had been working with her mother outdoors in their garden, went inside. M.C. found Hudson in his computer room, and asked if she could have a popsicle. M.C. testified that Hudson responded that she "had to do something" for him. The State then inquired as to what Hudson told M.C. to do. At this juncture, M.C. became non-responsive. The record reflects that M.C. and the prosecutor had a *sotto voce* exchange that the court reporter was unable to transcribe. M.C. later testified that she had been embarrassed to discuss the incident in front of others. The State then requested a brief recess, which the district court granted. When the proceedings resumed, M.C. testified that Hudson told her to "put his weiner in [her] mouth." M.C. testified that she complied. M.C. also testified that, afterwards, Hudson told her to get a paper towel and put it beside the computer. M.C. testified that Hudson began "shaking his weiner" into the paper towel "so it can bring out milk." Afterwards, M.C. testified, Hudson allowed her to get a popsicle, threatening her with a "whooping" if she told anyone about the incident.

M.C. testified that the second incident occurred in the bathroom at around the same time as the first incident. She was in the bathroom washing her hands when Hudson came in, stood behind her, and "tried to put his weiner in [her] butt." M.C. testified, however, that she could not "feel his weiner." She added that Hudson again threatened her with a "whooping" if she disclosed his acts.

M.C. recounted that she first revealed the incidents to her friend, S.H. S.H. testified that M.C. divulged that Hudson "had done something bad to her and that she was in the bathroom." When asked specifically what M.C. had told her, S.H. testified, "Well, he came up behind her and

was putting it in her." S.H. added that she related to her mother what M.C. had told her, and that her mother called Child Protective Services (CPS).

Cyndi Cantu, a forensic interviewer with CPS, testified that M.C. told her that Hudson "put his thing, which she called a thing, into her buttocks." Cantu then gave the following narrative, without objection:

> She said this happened in the bathroom at her house. And she described both of them having their clothes on when this happened. I asked her to tell me about that and how that was, how she was able to feel that happen, and she said she could feel his thing poking through his pants. . . . She said that on a different day she was in a computer room with [Hudson], and he pulled down his pants and showed his thing to her. . . . When she was telling me about the description of the penis she then went on to talk about him asking her to put his thing into her mouth. . . . She went on to tell me that his thing did go into her mouth, that she could feel the hairs on her tongue when that happened. . . . She then just continued to flow with the information and told me that in that same incident her dad also was wanting her to touch his penis. And she described that she did touch his penis with one hand and described that his thing felt like goo, and that he had wanted her to wiggle it around with her hand, and she said that was on the same day.

Eventually, the State asked Cantu another question, inquiring into what M.C. said about the incident in the bathroom. Cantu explained:

> I wanted to clarify with her a little bit more about how it was possible that the thing was in her butt if her clothes were on, and she told me, you know, she said I did feel it, and said that, that's when she told me that the—he had his pants on, she had a dress on, and that the thing, [Hudson's] thing was poking out, and she could feel it on her butt.

M.C.'s mother, Mary, testified that she was upset when she learned of M.C.'s allegations. Mary acknowledged, however, that on the day after she learned of the allegations, she

3

told Detective Nancy Zimmerman, the police investigator assigned to the case, that M.C. was "recanting" her story. Mary admitted that this statement had been a lie—M.C. had never recanted—and attempted to explain that Hudson had been "everything" to her and that all she could think about was "[h]ow can I get him [Hudson] to come home" and how she "wanted it to all go away." Mary testified that she did ensure that Hudson would no longer have access to M.C. and, in fact, moved her children to California to live with her mother. Mary returned to Austin "to give Alan support" and eventually married him for a time.

While the couple was still married, Mary returned to California, but testified that she and Hudson talked on the phone "almost daily." During one such phone conversation, Mary recounted that Hudson admitted abusing M.C.:

> I don't know how and when it happened but he said, [expletive] it, I did it. And I said, you did, what did you do? And he said, whatever [M.C.] is accusing me of, I did.

Mary hung up on Hudson, but he called her back "within five or ten minutes" and told her "he was sorry, he didn't mean to say it, and that he just wanted me to move on." Mary testified that their relationship "went down quickly" after the exchange, and that they eventually divorced.

Hudson testified in his defense. He denied ever touching M.C. in a sexual or inappropriate way. Hudson testified that M.C. once saw her mother having sex with him, and that M.C. also walked in on him masturbating in the computer room late at night. Hudson denied doing anything to M.C. in the bathroom other than giving her a "two seconds, normal, insignificant" hug.

4

Hudson also attempted to explain the phone conversation he had with Mary, in which he allegedly admitted his guilt.

> Q:   Did you—what did you say to Mary in that phone call?
>
> A:   I told her, [expletive] it, I did it.  And she asked me, what do you mean, about [M.C.]?  And I said, I did it, again.  Or rather, I said, I did it.  She hung up.  That was the end of it.
>
> . . . .
>
> Q:   Mr. Hudson, did you call her back?
>
> A:   Yes, sir, I did, within five minutes.
>
> Q:   What did you tell her?
>
> A:   I told her that while this was—I wanted her to move on and I didn't want any more emotional obligations, or for her to have emotional obligations to me, that this was not the way I should have done it, but . . .
>
> Q:   Do you regret making that phone call?
>
> A:   I regret saying that I did something that I didn't do.  I do not regret the consequences of it.  I do not regret that she did move on, and my children are now better taken care of.

Hudson was indicted for aggravated sexual assault (Count One), indecency with a child by contact by touching M.C.'s anus (Count Two, Paragraph One), indecency with a child by contact by causing M.C. to touch his penis (Count Two, Paragraph Two), and indecency with a child by exposure (Count Three).  The district court submitted the first two counts, but submitted indecency with a child by exposure as a lesser included offense within aggravated sexual assault.  The

5

jury found Hudson not guilty of aggravated sexual assault but found him guilty of indecency with a child by exposure[1] and both paragraphs of the indecency with a child by contact count.

During the punishment hearing, the State introduced evidence of extraneous offenses—occurring after his incidents with M.C. but before trial—to the effect that Hudson, then in his early thirties, had a sexual relationship with an underage woman and sought to entice another underage woman into a "three-way." *See* Tex. Pen. Code Ann. § 22.011(a)(2) (West Supp. 2005) (statutory rape). The district court did not instruct the jury that it must find the existence of these extraneous offenses beyond a reasonable doubt before it could consider them in assessing punishment. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2005). The jury assessed punishment at ten years' confinement for indecency with a child by exposure and sixteen years' confinement for each paragraph in count two. This appeal followed.

## DISCUSSION

**Double jeopardy**

In his first issue, Hudson asserts that his convictions for both indecency with a child by exposure and indecency with a child by contact violated his double jeopardy rights against multiple punishments for the same offense. *See Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Cervantes v. State*, 815 S.W.2d 569, 572 (Tex. Crim. App. 1991); *Barnes v. State*, 165 S.W.3d 75, 87 (Tex. App.—Austin 2005, no pet.). We first note that Hudson did not make a double jeopardy

---

[1] Aggravated sexual assault is a felony of the first degree. *See* Tex. Pen. Code Ann. § 22.021(e) (West Supp. 2005). The lesser-included offense for which Hudson was convicted, indecency with a child by exposure, is a felony of the third degree. *See id*. § 21.11(d) (West 2005).

6

objection during trial. A double jeopardy claim may be raised for the first time on appeal only when the double jeopardy violation is clearly apparent on the face of the record. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000); *Duvall v. State*, 59 S.W.3d 773, 776-77 (Tex. App.—Austin 2001, pet. ref'd). The court of criminal appeals has held that:

> [W]hen separate theories for an offense are issued to the jury disjunctively, a double jeopardy violation is not clearly apparent on the face of the record if one of the theories charged would not constitute a double jeopardy violation and there is sufficient evidence to support that valid theory. The fact that the jury's verdict could have relied on a theory that would violate the Double Jeopardy Clause, is not sufficient to show a constitutional violation clearly apparent on the face of the record.

*Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006) (citing *Gonzalez*, 8 S.W.3d at 641-43).

In this case, it is not clearly apparent on the face of the record that there was a double jeopardy violation. The State presented evidence of two separate incidents, each involving different conduct and occurring at different times. Specifically, M.C. testified that during the first incident Hudson exposed his genitals to her and told her to "put his weiner in [her] mouth." M.C. testified that this incident happened in Hudson's computer room. During the second incident, M.C. testified that, when she was in her bathroom, Hudson stood behind her and "tried to put his weiner in [her] butt." Other witnesses testified that M.C. told them that Hudson actually did contact her anus with his genitals during the bathroom incident.

Multiple convictions for sexual offenses that involve separate and distinct acts do not violate the Double Jeopardy Clause, even if they arise under the same statute. *See Vick v. State*, 991 S.W.2d 830, 833 (Tex. Crim. App. 1999). In order to prevail on a double jeopardy claim, the

evidence must show that the two offenses at issue necessarily arose from "one act which could be subject to two different interpretations." *Ochoa v. State*, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); *Martinez v. State*, 161 S.W.3d 697, 705 (Tex. App.—Austin 2005, pet. granted). In this case, there was evidence of more than one act.

Hudson relies on our opinion in *Patterson v. State*, in which this Court held that convictions for indecency with a child by exposure and indecency with a child by contact violated double jeopardy. *See* 96 S.W.3d 427, 432-33 (Tex. App.—Austin 2002), *aff'd*, 152 S.W.3d 88 (Tex. Crim. App. 2004). However, in *Patterson*, the indecency convictions were based on the same conduct for which the defendant was also convicted for aggravated sexual assault. *Id*. at 432. That is not the case here. Hudson was acquitted of aggravated sexual assault, and his conviction for the lesser-included offense of indecency with a child by exposure was based on different conduct than the conduct that was the basis of his conviction for indecency with a child by contact. Because Hudson has not demonstrated that his conviction for indecency with a child by contact was based on the same conduct underlying his conviction for indecency with a child by exposure, he has failed to show a double jeopardy violation. We overrule Hudson's first issue.

**Newly discovered evidence**

In his second issue, Hudson asserts that the district court erred by not granting Hudson a new trial on the basis of newly-discovered exculpatory evidence.[2] The basis for Hudson's new trial motion was his claim that a prosecutor "coached" M.C. in a restroom during the recess

---

[2] Hudson's new trial motion was overruled by operation of law. *See* Tex. R. App. P. 21.8(c).

8

taken during her testimony regarding the first abuse incident. Hudson asserts that if "defense counsel had been aware of this mid-testimony coaching, she could have cross-examined M.C. on what transpired in the restroom."

The code of criminal procedure provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 2005). A defendant is entitled to have his motion for new trial granted if (1) the newly-discovered evidence was unknown to him at the time of trial; (2) his failure to discover the new evidence was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial. *Wallace v. State*, 106 S.W.3d 103, 108 (Tex. Crim. App. 2003); *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002). A failure by a defendant to establish any of the essential requirements for a new trial based on newly discovered evidence warrants the trial court's denial of the motion. *Shafer v. State*, 82 S.W.3d 553, 556 (Tex. App.—San Antonio 2002, pet. ref'd). We review a trial court's denial of a motion for new trial for abuse of discretion. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

Hudson's claims of witness coaching are founded upon hearsay statements in an affidavit from Hudson's first appellate counsel, Christopher Morgan.[3] While Morgan apparently was not present at trial, his affidavit purports to recount various alleged events occurring during trial as related to Morgan by Hudson's trial counsel, Amanda McDaniel. No testimony from McDaniel

---

[3] Morgan later withdrew.

9

herself was introduced. Among other facts made the basis for the new trial motion, Morgan testified that McDaniel told him that after trial, she had learned that during a trial recess, M.C. and the prosecutor examining her "both went into the same restroom, where they had conversations and discussions about the witness' testimony . . . ." Morgan added that McDaniel had been informed by Ella Barefoot, Hudson's girlfriend, that Barefoot had seen the pair go into the restroom together, "whereupon some men blocked the door." Like McDaniel, Barefoot did not testify about this incident.

We cannot conclude that the district court would have abused its discretion in failing to conclude that this evidence was probably true. Morgan's statements about the prosecutor and M.C. entering the restroom together were based on multiple levels of hearsay concerning conclusory statements. *See* Tex. R. Evid. 805. Nor are any facts provided to support an inference that M.C. and the prosecutor (even if present together in the restroom) discussed M.C.'s testimony.[4] Additionally, if, in fact, Hudson's trial counsel had seen the prosecutor and the child victim witness obtain a recess and proceed to the same restroom and, after returning, M.C. became more responsive and more prejudicial to her client, the district court would not have abused its discretion in attributing to lack of diligence Hudson's failure to cross-examine M.C. concerning conversations with the prosecutor. We conclude that the district court did not abuse its discretion in not granting Hudson's motion for new trial. We overrule Hudson's second issue.

---

[4] Presumably, if some men "blocked the door," McDaniel and Barefoot would not have been able to enter the restroom and determine what was happening. It seems this evidence is, at best, speculative.

10

**Evidentiary sufficiency issues**

In his third issue, Hudson claims legally insufficient evidence of his identity, emphasizing that M.C. failed to identify him in the courtroom. In his fourth and fifth issues, Hudson challenges the legal and factual sufficiency of the evidence that his genitals ever contacted M.C.'s anus. *See* Tex Pen. Code Ann. § 21.11(c)(1).

### *Standard of review*

When there is a challenge to the legal sufficiency of the evidence to sustain a criminal conviction, we consider whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). It is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). We consider even erroneously admitted evidence. *Id*. The jury is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony. *Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Reconciliation of any conflicts in the evidence is within the exclusive province of the jury. *Id*.

In a factual sufficiency review, we view the evidence in a neutral light and will set aside the verdict only if the supporting evidence is so weak that the verdict is clearly wrong or the

11

contrary evidence is so strong that the jury could not have found all the elements of the crime beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 731 (Tex. Crim. App. 2005). A verdict is clearly wrong and unjust if the "jury's finding is 'manifestly unjust,' 'shocks the conscience,' or 'clearly demonstrates bias.'" *Id*. (quoting *Santellan v. State*, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997)). All the evidence is considered equally, including the testimony of defense witnesses and the existence of alternative hypotheses. *Orona v. State*, 836 S.W.2d 319, 321 (Tex. App.—Austin 1992, no pet.). Although due deference must be accorded the fact-finder's determinations, particularly those concerning the weight and credibility of the evidence, the reviewing court may disagree with the result in order to prevent a manifest injustice. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). The evidence will be deemed factually insufficient to sustain the conviction if the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga v. State*, 144 S.W.3d 477, 484-85 (Tex. Crim. App. 2004); see *Johnson*, 23 S.W.3d at 11.

### *Identity*

Hudson's legal sufficiency challenge regarding identity is predicated upon the following exchange when the State asked M.C. to identify Hudson at trial:

Q: The person that you have been talking about today when you say Alan, do you see him in the courtroom? Have you seen him in the courtroom?

A: No.

Q: Okay. Did you look around the courtroom and see if you saw anybody that looked like him?

A: Yes.

Identity may be proven by direct evidence, circumstantial evidence, or even inferences. *See Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986) (noting that victim's misidentification of juror as perpetrator at trial was not fatal where circumstantial evidence, including testimony of officer who arrested defendant at scene, pointed to defendant as perpetrator). Proof of the accused's identity through circumstantial evidence is not subject to a more rigorous standard than is proof by direct evidence, as both are equally probative. *McGee v. State*, 774 S.W.2d 229, 238 (Tex. Crim. App. 1989). The sufficiency of the evidence is then determined from the cumulative effect of all the evidence. *See Alexander v. State*, 740 S.W.2d 749, 758 (Tex. Crim. App. 1987). The absence of an in-court identification is merely a factor for the jury to consider in assessing the weight and credibility of the witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986) (even "total failure" to identify defendant goes only to weight to be given to identification evidence).

There was evidence that M.C. had not seen Hudson for three years. A rational jury could infer that M.C.'s difficulty in identifying Hudson was merely a result of the passage of time. A rational jury could also infer that when M.C. looked around the courtroom and saw somebody that "looked like" Hudson, she was, in fact, identifying Hudson. Additionally, throughout her testimony M.C. referred to the person who abused her as "father," "dad," "Alan," or "Alan Hudson." The State asked M.C.'s mother to identify Hudson in the courtroom and she did so, explaining that when they lived with Hudson, M.C. referred to him as "father." Hudson also testified that M.C. called him "dad." Viewing this evidence in the light most favorable to the verdict, we conclude that a rational jury could find that the State proved Hudson's identity as the perpetrator beyond a reasonable doubt. We overrule Hudson's third issue.

13

*Contact*

Hudson's issues concerning contact center on whether the evidence is legally and factually sufficient that during the second (bathroom) incident, his penis contacted M.C.'s anus, so as to support his conviction for indecency with a child by contact. Specifically, Hudson asserts that "the evidence shows the contact was to the buttocks, not the anus."

A person commits indecency with a child by contact if he "engages in sexual contact with the child." Tex. Pen. Code Ann. § 21.11(a)(1). Sexual contact is "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child." *Id*. § 21.11(c)(1). The court of criminal appeals has stated that "we cannot expect the child victims of violent crimes to testify with the same clarity and ability as is expected of mature and capable adults." *Villalon v. State*, 791 S.W.2d 130, 134 (Tex. Crim. App. 1990). A child need not testify with precision as to where she was touched, and evidence that she was touched on her "privates" or her "private area" or "between her legs" can support a finding that she was touched on her anus or genitals. *See*, *e.g.*, *Jones v. State*, 184 S.W.3d 915, 920 (Tex. App.—Austin 2006, no pet.) (six-year-old witness testified that she saw defendant touch victim "on the behind"); *Gallegos v. State*, 918 S.W.2d 50, 54 (Tex. App.—Corpus Christi 1996, pet. ref'd) (seven-year-old victim told outcry witness that defendant kissed her, took off her clothes, and put his "pee-pee" "in front of" and "in back of" her); *O'Hara v. State*, 837 S.W.2d 139, 141 (Tex. App.—Austin 1992, pet. ref'd) (eleven-year-old victim testified that defendant touched victim's "privates" and put defendant's "privates" "into my rear end").

Hudson argues that there is "literally no testimony relating to sexual contact with M.C.'s anus." We disagree. Admittedly, M.C.'s testimony regarding the bathroom incident is

somewhat problematic. After testifying that Hudson "tried to put his weiner in [her] butt," the State asked her if Hudson touched her on her body. M.C. answered, "No." The State then asked M.C. if she felt anything other than Hudson's chest on her back when he was hugging her. M.C. answered, "Nothing else." The State then asked the following questions:

Q: At that time, could you—on that incident, did you see his weiner?

A: No.

Q: Did you feel his weiner?

A: No.

Q: Did he say anything to you?

A: No.

M.C.'s testimony is not the only evidence the jury could have considered. The jury also heard Cyndi Cantu, the CPS forensic interviewer, testify that M.C. told her that Hudson "put his thing, which she called a thing, into her buttocks." Hudson further testified that M.C. told her "she could feel his thing poking through his pants." The jury also heard M.C.'s friend S.H. testify that M.C. told her that Hudson "came up behind her and was putting it in her." The jury also heard M.C.'s mother Mary testify about a phone conversation in which Hudson admitted to her, "I did it. . . . [W]hatever M.C. accused me of, I did." Hudson tried to explain that he did not mean what he said, and that he was just trying to help Mary "move on" with her life. Hudson also denied doing anything to M.C. in the bathroom other than giving her a "two seconds, normal, insignificant" hug.

The jury is the sole judge of the credibility of the witnesses and the weight to be given the evidence, and may choose to believe all, some, or none of it. *Margraves v. State*, 34 S.W.3d 912,

15

919 (Tex. Crim. App. 2000); *Rachal v. State*, 917 S.W.2d 799, 805 (Tex. Crim. App. 1996); *Skillern v. State*, 890 S.W.2d 849, 879 (Tex. App.—Austin 1991, pet. ref'd). Thus, the jury is permitted to believe or disbelieve any part of the testimony of any witness. *Jones v. State*, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). Reconciliation of evidentiary conflicts is solely a function of the trier of fact. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986); *Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982); *Perez v. State*, 960 S.W.2d 84, 86 (Tex. App.—Austin 1997, no pet.) (citing *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991)). We find nothing irrational about the jury's decision to accept the State's evidence and reject Hudson's evidence.

Contrary to Hudson's assertion, the evidence supports a finding that his penis contacted M.C's anus, not her "buttocks." *See Pryor v. State*, 719 S.W.2d 628, 630 (Tex. App.—Dallas 1986, pet. ref'd) (restricting definition of "anus" to its "strict anatomical sense—the posterior opening of the alimentary canal—thus excluding the buttocks"). S.H. testified that M.C. told her that Hudson "came up behind her and was putting it in her." CPS forensic interview Cantu testified that M.C. told her that Hudson "put his thing, which she called a thing, into her buttocks." A rational jury could infer from these statements that Hudson contacted M.C.'s anus.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Hudson committed the offense of indecency with a child by contact. *See Jones v. State*, 944 S.W.2d at 647 (Tex. Crim. App. 1996). We reach the same conclusion when considering all the evidence in a neutral light. We do not believe the proof of guilt is too weak or the contrary evidence is too strong to support a finding of guilt beyond a reasonable doubt. *Zuniga*, 144 S.W.3d at 484-85. The evidence is thus legally and

16

factually sufficient to support Hudson's conviction for indecency with a child by contact. We overrule his fourth and fifth issues

**Reasonable doubt instruction**

In his sixth issue, Hudson argues that the district court erred in failing to *sua sponte* give an instruction on reasonable doubt during punishment. During the punishment hearing, the State presented the testimony of Melissa Decharia, a former friend of Hudson's 17-year-old girlfriend at the time of trial, Ella Barefoot. Decharia testified that she knew that Hudson, then in his early thirties, and Barefoot had begun a sexual relationship when Barefoot was only 16-years-old. *See* Tex. Pen. Code Ann. § 22.011(a)(2) (statutory rape law). Decharia also testified that Hudson and Barefoot once asked her to "engage in a threesome" when Decharia was 16 years old. These events allegedly occurred after Hudson had abused M.C. but before trial. Barefoot and Hudson both denied Decharia's allegations.

Article 37.07 of the code of criminal procedure provides in relevant part:

> [E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to . . . evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. art. 37.07 ,§ 3(a)(1). "The plain language of this provision 'requires that such evidence may not be considered in assessing punishment until the fact-finder is satisfied beyond a reasonable doubt that [the extraneous bad acts and offenses] are attributable to the defendant.'" *Huizar v. State*, 12 S.W.3d 479, 481 (Tex. Crim. App. 2000) (quoting *Fields v. State*, 1 S.W.3d 687, 688 (Tex. Crim. App. 1999)).

17

Hudson did not request an instruction on reasonable doubt pursuant to this statute, nor did he object to its omission in the proposed charge. The district court did not give such an instruction *sua sponte*. The State agrees with Hudson that the district court was statutorily required to give a reasonable doubt instruction, and that the district court erred in not doing so. *See Elison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). We agree that the district court erred in failing to give a reasonable doubt instruction regarding Hudson's extraneous offenses, even though such an instruction was not requested. *Huizar*, 12 S.W.3d at 483.

We must next determine if this error requires reversal. Failure to include a reasonable doubt instruction in the charge on punishment does not implicate constitutional rights and is purely "charge error." *Id*. at 484. Accordingly, we are to review the error for "egregious harm" under *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). *See Elison*, 86 S.W.3d at 227. That is, we must decide whether the error was so egregious and created such harm it denied Hudson a fair and impartial trial. *Almanza v. State*, 686 S.W.2d at 171. Egregious harm consists of errors affecting the very basis of the case or that deprive the defendant of a valuable right, vitally affect a defensive theory, or make the case for conviction or punishment clearly and significantly more persuasive. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App.1991). In making this determination, we assess the degree of harm in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel, and all other relevant information revealed by the record as a whole. *Elison*, 86 S.W.3d at 228, *Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998); *Almanza*, 686 S.W.2d at 171. We engage in this assessment to illuminate the actual, not just the theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

18

Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996).

The State argues that there was no harm in not instructing the jury that these extraneous offenses must be proven beyond a reasonable doubt because Hudson had already testified without objection at the guilt/innocence phase of the trial that he had started dating his girlfriend before she started her junior year in high school. However, during the punishment hearing Hudson denied having a sexual relationship with his girlfriend when she was under the age of 17. Hudson also testified that Barefoot lied to him about her age, telling him that "she was 17 and in a month she would turn 18."

The State did discuss the alleged extraneous offenses during its closing argument:

> In order for someone to reform their behavior, they have to accept that there is a need to reform their behavior. These charges have been pending for three years, and what do we know about Alan Hudson's conduct over the last three years? We know that he has dated an underage girl. We know he has solicited sex from another underage girl. . . . The only character witness that came down and spoke, aside from his girlfriend was his girlfriend's mother. And she told you that she wasn't happy at the fact that he had a sexual relationship with her daughter, for a variety of reasons.

> Why Ella? She is a 16-year-old girl. Don't you think he worked with other adult women at IHOP? We have all been to IHOP. There are lots of adults that work there. Why wasn't he attracted to one of them? Why didn't he try and strike up a relationship with one of them? Go back to what Dr. Carter said about sex offenders' need for domination and control. Isn't a 16-year-old girl a lot more vulnerable and a lot more accepting and a lot more easy to control than an adult woman?

19

However, when discussing the range of punishment, the State did not emphasize the alleged extraneous offenses and instead focused on the offenses for which Hudson had been convicted and which had already been proven beyond a reasonable doubt:

> We are talking about a 7-year-old. We are talking about a 31, 30-year old man and a 7-year-old. We are talking about oral sex. We are talking about causing her to touch his penis. We are talking about causing his penis to touch her anus. That is a serious crime. That deserves serious punishment.

We also note that the alleged extraneous offenses were not specifically mentioned in the jury charge on punishment, although the charge did state, "You are instructed that in deliberating on the punishment to be assessed, you may take into consideration all the evidence admitted before you in the full trial of this case and the law as submitted to you by the Court."

However, we cannot say, after reviewing the entire record, that Hudson was denied a fair and impartial trial because of the failure of the district court to instruct the jury that the extraneous offenses must be proven beyond a reasonable doubt. Hudson does not point to any evidence that the jury would have given him a lesser sentence if the jury charge had included a reasonable-doubt instruction for the alleged extraneous offenses. *See Escovedo v. State*, 902 S.W.2d 109, 114-15 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (stating that "one factor to consider is whether there is any actual indication that the jury might have considered the extraneous offense because of the absence of an instruction on the burden of proof, that is, would the jury have disregarded or discounted the extraneous offense if the instruction had been included"). The jury had already found beyond a reasonable doubt that Hudson had sexually abused a seven-year-old girl. We are not convinced that evidence of a relationship—that may or may not have been sexual—with

20

a young woman who was over the age of 17 by the time of trial made the case for punishment "clearly and significantly more persuasive" than it already was. *See Saunders*, 817 S.W.2d at 692. We overrule Hudson's sixth issue.

**Ineffective assistance**

In his seventh issue, Hudson alleges that his trial counsel was ineffective, for four reasons: (1) counsel did not make a double jeopardy objection; (2) counsel allowed a child outcry witness to testify without objection; (3) counsel did not object to the inclusion of "knowingly" in the paragraph of the jury charge defining the offense of indecency with a child by exposure; and (4) counsel did not request that the district court include a reasonable-doubt instruction in the jury's charge on punishment.

Ineffective assistance of counsel claims are evaluated under the two-part test formulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), requiring a showing of both deficient performance and prejudice. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). A *Strickland* claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Direct appeal is usually an inadequate vehicle for raising such a claim because the record is generally undeveloped. *Id*. at 813-14. "This is true with regard to the question of deficient performance—in which counsel's conduct is reviewed with great deference, without the distorting effects of hindsight—where counsel's reasons for failing to do something do not appear in the record." *Goodspeed*, 187 S.W.3d at 392. The court of criminal appeals has said that "trial counsel should ordinarily be afforded an opportunity

21

to explain his actions before being denounced as ineffective." *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Absent such an opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001).

To show prejudice, "appellant must show a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). "In other words, the appellant must prove counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd) (citing *Strickland*, 466 U.S. at 686).

Even assuming trial counsel's performance was deficient for the reasons Hudson specifies, he has failed to show that, but for counsel's errors, the result of the proceeding would have been different. First, because there was no double jeopardy violation in this case, even if counsel had raised the issue, it is unlikely that the district court would have ruled on the issue in Hudson's favor.

Second, Hudson has made no showing that excluding the hearsay testimony of S.H. would have produced a different result in the proceedings. Hudson asserts that the only evidence suggesting anal contact came from S.H.[5] There is more. Cyndi Cantu, the CPS forensic interviewer,

---

[5] Hudson argues that only the first adult to whom the defendant makes an outcry may testify to hearsay statements made by the complainant regarding the abuse. *See* Tex. Code Crim. Proc. art. 38.072. Without citing to any authority, Hudson interprets this provision to mean that a child to whom the defendant makes an outcry may not similarly testify. We need not address the merits of this contention because we conclude that even if the testimony of the child outcry witness should

22

also testified to statements M.C. made about the anal contact. The testimony of S.H. came later in the trial than the testimony of Cantu, and was largely cumulative of that testimony with regard to whether anal contact occured.

Third, Hudson has made no showing of harm from counsel's failure to object to the inclusion of "knowingly" in the paragraph of the jury charge defining indecency with a child by exposure. Hudson's state of mind was not a contested issue at trial. Rather, the issue was M.C.'s credibility and whether Hudson committed the acts M.C. accused him of. Thus under the facts and circumstances of this case, we cannot conclude that Hudson was prejudiced by the district court's inclusion of "knowingly" in the jury charge. *See Rodriguez v. State*, 24 S.W.3d 499, 503 (Tex. App.—Corpus Christi 2000, pet. ref'd). Fourth, as we have already explained, the failure to include an instruction on reasonable doubt in the punishment charge did not deprive Hudson of a fair and impartial trial.

A defendant is not entitled to errorless counsel. *Lopez v. State*, 96 S.W.3d 406, 416 (Tex. App.—Austin 2002, pet. ref'd). Any mistakes made in this case were not "so outrageous that no competent attorney" would have made them. *See Garcia*, 57 S.W.3d at 440. Nor can we say that "counsel's representation so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Hall*, 161 S.W.3d at 152. An examination of the entire record reveals that trial counsel were effective advocates for Hudson throughout the proceedings, and succeeded in acquitting their client of the gravest charge against him, aggravated

have been excluded, its inclusion did not prejudice Hudson's case.

sexual assault. Under the highly-deferential review we are obligated to give counsel on claims of ineffective assistance, *see Goodspeed*, 187 S.W.3d at 392, we overrule Hudson's seventh issue.

**CONCLUSION**

Having overruled Hudson's issues on appeal, we affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed

Filed: August 18,2006

Do Not Publish